# In the United States Court of Federal Claims

Nos. 18-204C, 18-206C, 18-207C, 18-208C, 18-211C, 18-214C, 18-216C, 18-220C, 18-229C, 18-238C, 18-239C, 18-245C, 18-246C, 18-248C, 18-251C, 18-252C, 18-261C, 18-275C, 18-328C
(consolidated)

(Filed Under Seal: February 26, 2018)

(Reissued for Publication: March 6, 2018)[1]

************************************

FMS INVESTMENT CORP., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

and

PERFORMANT RECOVERY, INC., *et al.*,

Defendant-Intervenors.

************************************

Post-Award Bid Protest; Department of Education Loan Collections; Motion for Preliminary Injunction; Likelihood of Success on the Merits; Irreparable Harm; Balance of Hardships; Public Interests; 28 U.S.C. § 1491(b); RCFC 65(d); Granting Injunctive Relief.

*David R. Johnson*, with whom was *Tyler E. Robinson*, Vinson & Elkins LLP, Washington, D.C., for Plaintiff FMS Investment Corp.

*Jonathan S. Aronie*, with whom was *Townsend L. Bourne*, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., for Plaintiff Account Control Technology, Inc.

---

[1] The Court issued this decision under seal on February 26, 2018, and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before March 5, 2018. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full. As an additional plaintiff has been added to the larger bid protest at issue in this case since the Court issued its sealed opinion, the only change to this opinion is in the case caption above.

*William M. Jack*, with whom were *William C. MacLeod*, *David E. Frulla*, and *Amba M. Datta*, Kelley Drye & Warren LLP, Washington, D.C., for Plaintiff GC Services Limited Partnership.

*Todd J. Canni*, with whom were *Richard B. Oliver*, *J. Matthew Carter*, *Aaron S. Ralph*, *Alexander B. Ginsberg*, and *Meghan D. Doherty*, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, California, for Plaintiff Continental Service Group, Inc.

*David R. Pehlke,* with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Jose Otero* and *Sarah Falk*, General Attorneys, Office of the General Counsel, U.S. Department of Education, for Defendant.

## OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

WHEELER, Judge.

Currently before the Court are Plaintiffs FMS Investment Corp., Account Control Technology, Inc., GC Services Limited Partnership, Inc., and Continental Service Group, Inc.'s (collectively, "Plaintiffs") motions for Preliminary Injunctions in this consolidated bid protest action. For the reasons stated below, Plaintiffs' motions are GRANTED.

## Background[2]

In this post-award bid protest, eighteen plaintiffs challenge the Department of Education's ("ED" or "the Agency") decision to award debt collection contracts for defaulted student loans to awardees Perfomant Recovery, Inc. and Windham Professionals, Inc. Each consolidated plaintiff alleges that ED acted arbitrarily, capriciously, and without a rational basis in evaluating plaintiffs' proposals and making its final award decision. This is the second round of bid protests related to the solicitation at issue, with the first round of protests dismissed by this Court on February 14, 2018, roughly a month after the Agency completed corrective action.

Between February 2, 2018 and February 16, 2018, Plaintiffs filed motions for Preliminary Injunctions to enjoin ED from (1) proceeding with new contract awards under Solicitation No. ED-FSA-16-R-0009; and (2) recalling borrower accounts that the above-mentioned Plaintiffs are currently servicing under 2015 Award Term Extensions ("2015 ATE") to the July 2009 Private Collection Agency ("PCA") task orders as part of ED's

[2] Due to the need for an expeditious ruling in this matter, the Court necessarily provides only a truncated version of the facts and law relevant to this case.

contract transition to the new awards. The Government filed its opposition to the motions on February 16, 2018, and this Court held a hearing in open court to consider the parties' motions on February 21, 2018. As the Government has made multiple representations to the Court that ED has agreed to voluntarily stay its contract awards to Performant Recovery, Inc. and Windham Professionals, Inc. during the pendency of this bid protest, excluding appeal, the only issue currently before the Court is whether ED should be enjoined from recalling the borrower accounts that Plaintiffs' are currently servicing under their 2015 ATEs.

## Discussion

This Court has broad authority to order injunctive relief in the context of bid protests. See 28 U.S.C. § 1491(b); Turner Constr. Co., Inc. v. United States, 645 F.3d 1377, 1388 (Fed. Cir. 2011). The function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 961 (Fed. Cir. 1984); Cont'l Servs. Grp., Inc. v. United States, No. 17-2155 (Fed. Cir. 2018). Further, "the status quo to be preserved is that state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy." Litton Sys. Inc., 750 F.2d at 961. When deciding whether to grant a preliminary injunction, the Court weighs four factors: (1) the likelihood of plaintiff's success on the merits; (2) the prospect of irreparable harm to the plaintiff in the absence of injunctive relief; (3) the balance of hardships; and (4) the public interest. KWV, Inc. v. United States, 108 Fed. Cl. 448, 455 (2013); Serco, Inc. v. United States, 101 Fed. Cl. 717, 720 (2011). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

Here, in order to preserve the status quo, the Court must maintain the state of affairs that existed before Plaintiffs filed their complaints in this consolidated bid protest. That state of affairs includes Plaintiffs retaining and servicing the accounts under their unexpired in repayment retention periods provided for by their 2015 ATEs. Additionally, as explained below, the Court has determined that the weight of the preliminary injunction factors outlined above favors granting injunctive relief.

### A. Likelihood of Success on the Merits

Regarding the first factor, while the Court does not intend to make factual findings at this time, it is convinced that Plaintiffs are likely to succeed on the merits of their bid protests. While a full administrative record has not yet been filed in this case, the Court has before it a set of core documents from ED that include, among other things, ED's Past Performance, Technical Evaluation, and Small Business Evaluation Committees' Consensus Reports, the Source Selection Decision Memorandum, and the Contracting Officer's Responsibility Determination. See Dkt. No. 70. After reviewing this

documentation and considering Plaintiffs' arguments both in their motions and in open court, the Court has serious questions over ED's evaluation of proposals in this procurement.  The evidence currently before the Court points to inconsistencies, omissions, unequal treatment of offerors, and cherry-picked data that the Court finds to be rather problematic.  Based on these initial observations, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits in their bid protests.

B.  Irreparable Harm

Regarding the second factor, the Court has determined that Plaintiffs will be immediately and irreparably harmed if ED recalls the accounts at issue that are currently in their in repayment retention periods.  In weighing this factor, the Court must look into whether plaintiff has an adequate remedy in the absence of an injunction.  NetStar-1 Gov't Consulting, Inc. v. United States, 101 Fed. Cl. 511, 539 (2011) (citing Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993)).  Additionally, it is well settled in this Court that a lost opportunity to compete may constitute irreparable harm.  See Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 568 (2012); Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 744 (2000); PGBA LLC v. United States, 57 Fed. Cl. 655, 664 (2003).  Plaintiffs allege that absent a preliminary injunction, their ability to compete for this contract will be greatly diminished, if not completely eviscerated, because they will be forced to lay off key personnel as a result of lost revenue.  Moreover, Plaintiffs have represented to the Court that they not only stand to lose key personnel absent the entry of a preliminary injunction, but that their businesses may cease to exist altogether if ED recalls the accounts they are currently servicing, as these accounts make up a substantial portion of their collection portfolios.  Thus, on balance, the Court finds that Plaintiffs have sufficiently demonstrated that they will be irreparably harmed if preliminary injunctive relief is not granted.

C.  Balance of Hardships

Regarding the third factor, the Court finds that the balance of hardships here weighs in favor of the Plaintiffs.  In fact, there will be little to no harm to the Government if injunctive relief is granted; ED is still free to transfer any new accounts to other valid contracting vehicles, and the accounts being serviced by the Plaintiffs will continue to be serviced.  In contrast, Plaintiffs stand to lose their viability as businesses in the absence of injunctive relief due to significant losses in revenue and a diminished ability to retain necessary and qualified staff.  The Government's argument that ED will be harmed because it will be stripped of the ability to manage its own collections program is hardly convincing.  As this Court has held, "'only in exceptional cases would [delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests.'"  Univ. Research Co., LLC v. United States, 65 Fed. Cl. 514 (2005) (quoting Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 399 (1999)).  This is not an exceptional case.  As explained above, any cost to the Government as a result of a delay brought about by an injunction is

either minimal or non-existent. As such, the balance of hardships clearly weigh in favor of Plaintiffs.

D. Public Interest

The Court finds this last factor to be neutral. On the one hand, the public interest is served "by upholding the integrity of the procurement process" and ensuring honest, open, and fair competition in public procurement, which will be accomplished through maintaining the status quo by granting injunctive relief. See SAI Indus. Corp. v. United States, 60 Fed. Cl. 731, 747 (2004); see also Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 269 (1997). On the other hand, the public interest is duly served in the absence of injunctive relief, as ED would be able to assign the recalled accounts to other existing contract vehicles and work on those accounts would continue to proceed in a timely and efficient manner. While the Court finds this last factor to be neutral, the other three factors weigh heavily in Plaintiffs' favor. As such, injunctive relief is appropriate.

The Court further notes that the injunctive relief Plaintiffs request in the instant case is distinguishable from the injunctive relief stayed by the Federal Circuit during the prior round of protests in Cont'l Servs. Grp. v. United States, No. 17-2155 (Fed. Cir. 2017) ("ConServe") for the following reasons. First, the injunction at issue in ConServe was much broader in scope and froze ED's entire collections program,[3] whereas the requested injunctive relief here is narrow and will not result in any work stoppage; rather, it merely prevents ED from recalling accounts that are currently being serviced—and will continue to be serviced—by Plaintiffs under their 2015 ATEs which are in the middle of their two-year in repayment retention period.

Relatedly, contrary to the Government's assertions, Plaintiffs' posture and theory of harm in this case is likewise distinguishable from Plaintiff Progressive Industry's ("Progressive") posture and speculative theory of harm in the prior round of protests. In the prior round, Progressive argued that the portion of the Court's injunction preventing ED from recalling Progressive's accounts under its expired 2009 PCA task order was valid because Progressive might have received a new contract award to transfer those accounts over to but for ED's flawed evaluation process. Cont'l Serv. Grp., No. 2155, slip op. at 18–19. The Federal Circuit disagreed, holding that Progressive's theory of harm was entirely speculative, especially in the absence of an administrative record, and that PCAs were not entitled to retain accounts "when their old contracts expire." Id. at 19. Progressive's 2009 PCA task order fully expired in April 2017 after its two-year in repayment retention period expired. In stark contrast, Plaintiffs' contracts here have not

[3] In its nonprecedential ConServe decision, the Federal Circuit stayed the portion of the Court of Federal Claims' injunction that enjoined ED from "transferring work to be performed under the contract at issue . . . to other contracting vehicles to circumvent [the] bid protest." See Cont'l Servs. Grp., No. 2155, slip op. at 6.

yet expired, as their 2015 ATEs (of which Progressive was never granted) are in the middle of their two-year in repayment retention periods and Plaintiffs are actively servicing preexisting accounts under those unexpired contracts. Moreover, the Court has the benefit of an abbreviated administrative record presently before it, which, upon the Court's initial observations, shows that Plaintiffs' theory of harm is far from speculative; rather, as the Court has explained above, Plaintiffs have a substantial likelihood of succeeding on the merits of their bid protests.

Lastly, the Government's attempt to disconnect its recall of Plaintiffs' accounts from the larger procurement at issue in this consolidated bid protest is disingenuous. This Court's jurisdiction over ancillary matters connected to bid protests is broad and sweeping in scope. See RAMCOR Servs. Grp. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("As long as a statute [or regulation] has a connection to a procurement at issue, an alleged violation suffices to supply jurisdiction."); see also Jacobs Technology, Inc. v. United States, 131 Fed. Cl. 430, 444–45 (2017) ("The third prong of this court's bid protest jurisdiction provides jurisdiction over 'any alleged violation of [a] statute or regulation in connection with a procurement or a proposed procurement.' The Federal Circuit has stated that this provision is 'very sweeping in scope.'"(quoting 28 U.S.C. § 1491(b)(1); RAMCOR Servs. Grp., 185 F.3d at 1289)). Here, ED announced its planned recall of Plaintiffs' accounts shortly after making its new award decisions, despite the fact that Plaintiffs' in repayment retention periods do not expire until April 2019. Moreover, ED chose not to treat all 2015 ATE awardees equally in the recall, as Windham Professionals, Inc.—a contract awardee under the new procurement—was specifically excepted from the planned recall. This recall is unlike ED's previous recalls, which were linked to either full contract expiration (as in the case of Progressive) or other non-procurement related events. Taken as a whole, these facts present enough of a nexus to connect the recall to the larger procurement at issue in this consolidated bid protest and thus, this Court's bid protest jurisdiction over the recall is proper.

## Conclusion

For the reasons stated above, the Court finds that the prerequisites for issuing a preliminary injunction have been fully satisfied in the instant case. Accordingly, it is ORDERED that the United States of America, the United States Department of Education, and their officers, agents, servants, employees, and representatives are ENJOINED, pursuant to Rule 65(d), from recalling borrower accounts that Plaintiffs FMS Investment Corp., Account Control Technology, Inc., GC Services Limited Partnership, and Continental Service Group, Inc. are servicing as part of their in repayment retention periods under their 2015 ATEs to the 2009 PCA task orders, from the date and time of this Opinion and Order until the Court has fully resolved this consolidated bid protest.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge