# In the United States Court of Federal Claims

Nos. 18-204C, 18-206C, 18-207C, 18-208C, 18-211C, 18-214C, 18-216C, 18-220C, 18-229C, 18-238C, 18-239C, 18-245C, 18-246C, 18-248C, 18-251C, 18-252C, 18-261C, 18-275C, 18-328C
(consolidated)

(Filed: March 29, 2018)

*************************************

FMS INVESTMENT CORP., *et al.*,

        Plaintiffs,

v.

THE UNITED STATES,

        Defendant,

and

PERFORMANT RECOVERY, INC., *et al.*,

        Defendant-Intervenors.

*************************************

Post-Award Bid Protest; Department of Education Loan Collections; Motion to Disqualify Counsel; ABA Model Rule 1.7; Concurrent Conflict of Interest.

*Todd J. Canni*, with whom were *Richard B. Oliver*, *J. Matthew Carter*, *Aaron S. Ralph*, *Alexander B. Ginsberg*, and *Meghan D. Doherty*, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, California, for Plaintiff Continental Service Group, Inc.

*Thomas B. Mason*, with whom were *Amy E. Richardson* and *Samuel T. Walsh*, Harris Wiltshire & Grannis, LLP, Washington, D.C., for Pillsbury Winthrop Shaw Pittman LLP.

*Michael McGill*, with whom were *Thomas L. McGovern III*, *Christine Reynolds*, and *Thomas A. Pettit*, Hogan Lovells US LLP, Washington, D.C., for Defendant-Intervenor Performant Recovery, Inc.

OPINION

WHEELER, Judge.

On March 23, 2018, the Court held a status conference in the above-captioned consolidated bid protest to discuss, among other things, Defendant-Intervenor Performant Recovery, Inc.'s ("Performant") motion to disqualify Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as counsel for Plaintiff Continental Service Group, Inc. ("ConServe"), Dkt. No. 110. By Order of the Court dated March 23, 2018, the Court disqualified Pillsbury as counsel for ConServe effective immediately. See Dkt. No. 160. This Opinion provides further explanation of the Court's decision.

Background

A.  Brief Overview of This Bid Protest

In this post-award bid protest, nineteen plaintiffs challenge the Department of Education's ("ED" or "the Agency") decision to award debt collection contracts for defaulted student loans to awardees Performant Recovery, Inc. and Windham Professionals, Inc. Each consolidated plaintiff alleges that ED acted arbitrarily, capriciously, and without a rational basis in evaluating plaintiffs' proposals and making its final award decision. This is the second round of bid protests related to the solicitation at issue, with the first round of protests dismissed by this Court on February 14, 2018, roughly a month after the Agency completed corrective action.

Between February 2, 2018 and February 16, 2018, Plaintiffs FMS Investment Corp., Account Control Technology, Inc., GC Services Limited Partnership, Inc., and ConServe filed motions for Preliminary Injunctions to enjoin ED from (1) proceeding with new contract awards under Solicitation No. ED-FSA-16-R-0009; and (2) recalling borrower accounts that the above-mentioned Plaintiffs are currently servicing under 2015 Award Term Extensions ("2015 ATE") to the July 2009 Private Collection Agency ("PCA") task orders as part of ED's contract transition to the new awards. The Government has made multiple representations to the Court that ED has agreed to voluntarily stay its contract awards to Performant Recovery, Inc. and Windham Professionals, Inc. during the pendency of this bid protest, excluding appeal, and the Court granted part two of the preliminary injunction motions on February 26, 2018. See Dkt. No. 106.

Since that time, the Government has produced the Administrative Record ("AR") in this case. See Dkt. No. 131. The Government's filing prompted a slew of motions to supplement the AR by Plaintiffs, followed by a Notice from the Government that ED is unlikely to pursue continued litigation in this bid protest. See Dkt. No. 149. The MJAR briefing schedule in this case has been suspended as a result, although the Court has ordered

the Government to produce certain documents to Plaintiffs while ED decides its next steps in this procurement and litigation.  See Dkt. No. 160.

      B.  Performant's Motion to Disqualify

On March 2, 2018, Performant filed a motion to disqualify Pillsbury as counsel for ConServe, citing a concurrent conflict of interest because Performant is also a current client of Pillsbury—although not in this particular matter—and is directly adverse to ConServe in this litigation.  Def. Int.'s Mot. at 1–2.  In its motion and supporting memorandum, Performant details Pillsbury's relationship with Performant, which began on September 28, 2011 after Performant's parent company, Performant Financial, signed an engagement letter with Pillsbury "with respect to its planned public offering 'and as corporate counsel going forward.'"  Def. Int.'s Mem. at 2.  Performant notes that the engagement letter expressly extended to Performant Financial's wholly owned subsidiaries, including "Diversified Collection Services, Inc.," which later changed its name to "Performant Recovery, Inc." under the advisement of Pillsbury.  Id. at 2–3.  Performant further notes that Pillsbury has been advising Performant "on a broad range of legal matters, including investments and corporate transactions," since 2011.  Id. at 3.

During the first round of protests over this procurement, both Performant and ConServe protested ED's initial awards and had similarly aligned interests.  Id. at 6.  However, those interests diverged after ED completed corrective action in January 2018 and awarded a debt collection contract to Performant and not ConServe.  Shortly thereafter, Pillsbury's attorney of record for ConServe, Todd Canni, made the following disparaging comments about Performant to the Washington Post:

> Given the fact that Performant was not a highly rated [company] and, in fact, was rated fairly low . . . the agency will be under intense scrutiny and will need to explain how suddenly these ratings changed so significantly to allow Performant to leap frog over so many other qualified [companies].

Danielle Douglas-Gabriel, Education Department Awards Debt-Collection Contracts to Company with Ties to DeVos, WASH. POST (Jan. 12, 2018), https://www.washingtonpost.com/news/grade-point/wp/2018/01/11/education-dept-awards-debt-collection-contract-to-company-with-ties-to-devos/?utm_term=.ff244e6f597f.  Performant only learned of Pillsbury's representation of ConServe in this matter after a reporter asked one of Performant's executives to comment on Mr. Canni's remarks.  Def. Int.'s Rep. at 2, 10.

After learning of Mr. Canni's remarks, Jeffrey Haughton, Performant Financial's (and thus Performant's) Chief Operating Officer, promptly contacted Pillsbury to express his displeasure at Mr. Canni's remarks considering Performant was also a client of

Pillsbury. Def. Int.'s Mem. at 5. Despite now having notice of a conflict of interest over Pillsbury's representation of both ConServe and Performant, Mr. Canni submitted a pre-filing notice of ConServe's intent to file a bid protest complaint and a motion for a temporary restraining order and preliminary injunction with this Court on February 12, 2018. Id. A few days later, counsel for Performant in this matter, Michael McGill of Hogan Lovells US LPP ("Hogan Lovells"), contacted Mr. Canni reminding him of the conflict, which prompted a conference call between Pillsbury and Hogan Lovells to discuss the issue further. Id. at 5–6. A few moments after that call ended, to Hogan Lovells' surprise, Mr. Canni filed ConServe's bid protest complaint and motion for a TRO/PI with the Court, challenging, among other things, ED's contract award to Performant. Id. at 6.

According to Performant, Hogan Lovells made multiple attempts to resolve the conflict of interest issue without involving the Court, but to no avail. Id. at 8–9. After Pillsbury retained its own counsel to address this issue and the parties remained at an impasse, Performant filed its motion to disqualify Pillsbury as counsel for ConServe on March 2, 2018. See Dkt. No. 110. ConServe filed its response on March 16, 2018, and Performant filed a reply on March 21, 2018. See Dkt. Nos. 146, 156.[1] The Court heard arguments from both parties during its status conference on March 23, 2018 and issued a bench ruling and subsequent written Order disqualifying Pillsbury as counsel for ConServe, effective immediately. See Dkt. No. 160. The Court will now explain its decision to do so in greater detail.

Discussion

ABA Model Rule 1.7(a) states that:

> [e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or third person or by a personal interest of the lawyer.

Model Rules of Prof'l Conduct r. 1.7(a) (Am. Bar Ass'n 2016). While the Court of Federal Claims does not explicitly incorporate the ABA Model Rules of Professional Conduct into its own rules, the Court continues to use the ABA Model Rules "to provide guidance

---

[1] Both of these documents were subsequently corrected by the parties for typographical errors. See Dkt. Nos. 147, 157.

4

regarding counsel's ethical obligations to the [C]ourt." Edmonds ex rel. Edmonds v. Sec'y of Dep't of Health and Human Servs., No. 04-87V, slip op. at 12, n.32 (Fed. Cl. Mar. 22, 2012). Counsel may represent a client in light of a conflict if, among other things, "each affected client gives informed consent, confirmed in writing." Model Rules of Prof'l Conduct r. 1.7(b)(4). Here, it is clear that Pillsbury's representation of ConServe in this bid protest and its representation of Performant as Performant's corporate counsel presents a concurrent conflict of interest. For the reasons explained below, the Court believes this conflict is one that cannot be overcome.

### A. Pillsbury Has Breached Its Duty of Loyalty Under Rule 1.7(a) Beyond Repair.

Neither ConServe nor Performant contest the fact that Pillsbury's representation of each entity presents a conflict of interest, as ConServe and Performant are adverse parties in this litigation. The parties do dispute, however, whether Pillsbury is permitted to continue its representation of ConServe in light of this conflict. The Court is of the opinion that Pillsbury is not permitted to continue such representation due to the troubling course of events—and their resulting consequences—that took place throughout this bid protest, to which the Court now turns.

#### 1. Mr. Canni's Comments to the Washington Post

Regardless of whether Mr. Canni was aware of Pillsbury's conflict of interest at the time he made his disparaging comments about Performant, his comments have created a breach of the duty of loyalty that cannot be cured. By speaking ill of Performant—a contemporaneous Pillsbury client—to the Washington Post, Mr. Canni has created a situation where he has stunted Pillsbury's ability to effectively and zealously advocate on ConServe's behalf. ConServe's filings in this matter directly challenge ED's contract award to Performant as arbitrary and capricious and allege a potential conflict of interest between Secretary DeVos and Performant. See ConServe Compl. at 85–86, 89. Now that Mr. Canni's comments about Performant have been brought into the public realm and criticized—criticized, the Court notes, well before this Court recently expressed its own concerns[2]—Mr. Canni is faced with the constant dilemma of "to speak, or not to speak," as he may now think twice about what he comments to the media. This dilemma, in turn, creates an even larger problem: will Mr. Canni, or for that matter any Pillsbury lawyer, also have to think twice about arguments he or she makes before the Court on behalf of ConServe that are critical of Performant, given the fact that Performant is also one of his firm's clients? The answer is likely yes, and that answer will prevent Mr. Canni or any other Pillsbury lawyer from effectively advocating for ConServe, given that ConServe's case relies on the invalidation of ED's award to Performant.

---

[2] Performant notes that its COO, Jeffrey Haughton, alerted Pillsbury in January 2018 that Performant was also a client of Pillsbury and that Performant was "outraged" over Mr. Canni's recent disparaging comments in the Post about Performant. See Def. Int.'s Mem. at 5.

5

Moreover, the fact that Pillsbury does not represent Performant in this specific matter is irrelevant and does not diminish the nature or severity of the conflict; Pillsbury is still Performant's main corporate counsel and has been advising Performant on a wide range of matters, including issues related to the refinancing of debt ConServe allegedly ties to the appearance of a conflict of interest between Performant and Secretary DeVos in its complaint, since 2011. See Def. Int.'s Mem. at 12; see also Celgard, LLC v. LG Chem. LTD., 594 Fed. App'x 669 (Fed. Cir. 2014) (holding that the duty of loyalty extends to a firm's client who may be adversely affected by the firm's representation of another client, even if the former client is not represented by the firm in the latter client's litigation—as is the case here—or even if the former client is not a named party in the matter at all). The conflict persists and will continue to persist if Pillsbury is not disqualified from representing ConServe in this matter.

### 2. Pillsbury's Failure to Obtain Performant's Consent

This Court also finds problematic the fact that Pillsbury never obtained, or even attempted to obtain, Performant's consent to Pillsbury's representation of ConServe after all parties learned of the concurrent conflict of interest in January 2018. Despite becoming aware of the conflict after Performant's COO quickly expressed his displeasure at Mr. Canni's comments and notified Pillsbury of the conflict, Pillsbury at no time sought Performant's or ConServe's consent to continue its representation of ConServe in this matter. Instead of asking for consent, Pillsbury ignored Mr. Haughton's concerns and submitted a bid protest pre-filing notice to the Court that indicated ConServe would be challenging ED's award to Performant. See Def. Int.'s Mem. at 5. This prompted another inquiry from Performant to Pillsbury reminding Pillsbury of the conflict, which in turn led to a conference call to discuss a way forward. Id. at 5–6. However, shortly after the parties agreed to a further follow-up call, Pillsbury filed ConServe's bid protest complaint in this Court. Id. at 6. At no time after ConServe's filing did Pillsbury seek Performant's consent to proceed with its representation of ConServe. See Def. Int.'s Rep. at Ex. 1, ¶ 14. The Court will not speculate as to whether Performant or ConServe would have consented to Pillsbury's representation of ConServe despite the conflict, but the Court finds Pillsbury's apparent lack of attention or concern over the conflict of interest troubling, adding further to its breach of the duty of loyalty under Rule 1.7(a).

### 3. Pillsbury's Conflicts Check System

In its response to Performant's motion to disqualify, Pillsbury explains to the Court that it ran an updated conflicts check against Performant after ED announced the results of its corrective action in January 2018. See Pl.'s Resp. at 9–10. The conflicts check returned a "NO CONFLICT" result because Performant was formally known as "Diversified Collection Services, Inc.," and its name had not been updated in Pillsbury's conflicts system. See id. at 10 n.1. The Court understands that conflict systems are not perfect, but the irony here is that Pillsbury was the very law firm that advised Performant on its name

6

change in 2012.  See Def. Int.'s Rep. at Ex. 1, ¶ 7.  At the very least, Pillsbury should have either updated its conflicts system in 2012 to reflect the name change or run an additional conflicts search for "Diversified Collection Services, Inc." knowing that the name change had taken place.  To claim that Pillsbury should be in the clear because it received a "NO CONFLICT" result simply does not hold water, especially given Pillsbury's knowledge of and advisement on Performant's name change.

> B.  Pillsbury's Conflict of Interest Is Not a "Thrust Upon" Conflict.

Pillsbury further argues that it should not be disqualified from representing ConServe in this bid protest because this conflict arose in the middle of Pillsbury's representation of ConServe—as ConServe retained Pillsbury in December 2016 at the outset of ED's solicitation—and should therefore be treated as a "thrust upon" conflict.  See Pl.'s Resp. at 13–14.  Under the comments to ABA Model Rule 1.7 and D.C. Rules of Professional Conduct Rule 1.7(d), counsel need not withdraw from its representation of a client "[i]f a conflict is not reasonably foreseeable at the outset of the representation."  See D.C. Rules of Prof'l Conduct r. 1.7(d).  Comment 5 to ABA Model Rule 1.7 includes the "realignment of parties in litigation" as one such potential unforeseeable conflict.  See Model Rules of Prof'l Conduct r. 1.7 cmt. 5.

While the Court acknowledges that it is difficult to foresee *how* the parties may realign in a bid protest, it is certainly foreseeable that they *would* realign in a bid protest, especially in one involving an IDIQ contract with multiple offerors and awardees like the one at issue here.  Pillsbury's claim that it could not have possibly foreseen an eventual realignment of parties in this litigation at the outset of this bid protest—particularly in a bid protest that appears to have an affinity for corrective action—is ignorant and careless.  Awards are granted, awards are challenged, corrective action is taken, new awards are granted, new awards are challenged, plaintiffs become defendant-intervenors and vice versa, and the cycle repeats; such is the life of a bid protest in this Court.  See, e.g., Sonoran Tech. & Prof'l Servs., LLC v. United States, 135 Fed. Cl. 28 (2017); Applied Bus. Mgmt. Solutions, Inc. LLC v. United States, 117 Fed. Cl. 589 (2014); Sotera Def. Solutions, Inc. v. United States, 118 Fed. Cl. 237 (2014).  As a law firm with a plethora of experience in bid protests and government contracts, Pillsbury should know this cycle well and should have known that ConServe's and Performant's interests could have easily diverged at some point in this litigation as this rather knotty procurement marched on.

Moreover, Pillsbury's argument that Performant conveniently raised this conflict issue "midstream" only after the parties' interests diverged and that Performant should have instead raised it at the outset of this bid protest in December 2016 is disingenuous.  First, Performant was not aware that a conflict even existed until a reporter reached out to its COO asking for comment on Mr. Canni's disparaging remarks in the Washington Post in January 2018.  See Def. Int.'s Rep. at 2, 10.  Further, Performant was not aware of the conflict beforehand because Pillsbury failed to both catch and inform Performant, one of

7

its clients, of the conflict—yet another breach of Pillsbury's duty of loyalty to both ConServe and Performant. To accuse Performant of capitalizing on timing and waiving any conflicts issue by failing to act sooner when Performant was under no duty to identify *Pillsbury*'s conflict in the first place is dubious, misleading, and puzzling. See Int'l Bus. Machs. Corp. v. Levin, 579 F.2d 271, 282 (3d Cir. 1978) (holding that it is the attorney's duty, not the client's, to disclose of any conflicts of interest and to obtain a client's consent to proceed); Unified Sewerage Agency v. Jelco Inc., 646 F.2d 1339, 1345–46 (9th Cir. 1981) (same); CenTra, Inc. v. Estrin, 538 F.3d 402, 415–17 (6th Cir. 2008) (same).

### C. ConServe Will Be Able to Mitigate Any Harm Arising From Pillsbury's Disqualification.

Pillsbury's argument that ConServe will be severely prejudiced by Pillsbury's disqualification at this moment in the litigation is unavailing. The Court has suspended the MJAR briefing schedule in this case, and the Government has notified the Court and the parties that ED does not intend to pursue continued litigation in this matter. See Dkt. No. 149. What's more, it is highly likely that the parties will once again realign once ED decides its next course of action, and ConServe may very well find itself in a completely different posture. In a region, indeed a nation, filled with competent government contract and bid protest lawyers, the Court does not share Pillsbury's concern that ConServe will be unable to find new counsel this late in the game, especially since the game itself is about to change yet again. Counsel for Performant even expressed during the Court's recent status conference that it would be willing to assist ConServe in securing new counsel, a promise this Court hopes Mr. McGill, if called upon, will honor. The Court appreciates the work and effort Pillsbury has put into representing ConServe in this matter up to this point. However, had Pillsbury put a little more effort into identifying and addressing its conflict of interest earlier in this litigation, perhaps this Court's Order and subsequent Opinion would not have been necessary.

Finally, the Court finds Pillsbury's other arguments against disqualification equally unavailing. Even if this Court adopted Pillsbury's "balancing" approach, the Court would still find in its discretion that Pillsbury's failures and lack of attention to the conflict of interest warrant its disqualification from serving as ConServe's counsel in this bid protest.

### Conclusion

For the reasons explained above, the Court GRANTS Performant's motion to disqualify Pillsbury as counsel for ConServe in this matter.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge