## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |  |
|---|---|---|
| FMS Investment Corp. *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case Nos. 18-204 *et al*. |
| | ) | |
| v. | ) | Judge Thomas C. Wheeler |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PERFORMANT RECOVERY, INC. *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

### PLAINTIFF FMS INVESTMENT CORP.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff FMS Investment Corp. ("FMS") respectfully submits this response to Defendant's May 7, 2018 Motion to Dismiss. Dkt. No. 189 (the "Motion"). Pursuant to Rule 15(d) of the Rules of the Court of Federal Claims ("RCFC"), FMS has requested leave from this Court to supplement its Complaint to account for events that occurred after FMS filed its initial Complaint and to assert additional grounds of protest relating to the Department of Education's ("ED") continuing irrational actions. Dkt. No. 214. Specifically, FMS now challenges ED's recent decision to cancel Solicitation No. ED-FSA-16-R-0009 (the "Solicitation") at issue and yank the rug out from under FMS and the other Private Collection Agencies ("PCAs") despite years of effort and millions spent pursuing a new contract in response to ED's Solicitation. As detailed in FMS's proposed Supplemental Complaint, ED's cancellation decision is unreasonable and lacks a rational basis. Because this Court has subject matter jurisdiction over challenges to an agency's

decision to cancel a solicitation without a rational basis, the current protest is not moot and should not be dismissed.  Thus, the Government's Motion should be denied and the parties should proceed to the merits of FMS's challenge to the cancellation decision.

## FACTS

On January 11, 2018, ED issued notices of award to Windham Professionals, Inc. ("Windham") and Performant Recovery, Inc. ("Performant") under the Solicitation.  After receiving its debriefing letter, on February 9, 2018, FMS filed its Complaint with this Court protesting ED's irrational, arbitrary, and capricious evaluation and the resulting flawed award decisions.  Dkt. No. 1.  On February 11, 2018, FMS moved this Court for a Temporary Restraining Order and a Preliminary Injunction to enjoin ED from recalling accounts under its Award Term Extension ("ATE") thereby needlessly and irreparably crippling FMS during the pendency of this protest of ED's unreasonable and arbitrary actions.  *See* Dkt. No. 11.

On February 26, 2018, the Court granted FMS's motion and issued a preliminary injunction.  In issuing the injunction, the Court indicated that it had "serious questions over ED's evaluation of proposal in this procurement."  Dkt. No. 106 at 3.  The Court stated that "[t]he evidence before the Court points to inconsistencies, omissions, unequal treatment of offerors, and cherry-picked data that the Court finds to be rather problematic."  *Id.* at 3-4.  As a result, the Court concluded that FMS and the other consolidated plaintiffs were likely to succeed on the merits of their bid protests.  The Court also found that FMS had sufficiently demonstrated that it would be irreparably harmed absent preliminary injunctive relief while ED had failed to offer any justification that it would be harmed at all if the injunction were entered.  *Id.* at 4.  Thus, to preserve FMS's viability as a business concern during the Court's review of what likely were illegal and

unreasonable agency actions, the Court enjoined ED from recalling FMS's and the other ATE contractors' accounts to preserve the status quo during the pendency of the protest.

Facing a clearly meritorious protest from FMS (and likely others), on March 19, 2018, the Government filed a Notice informing the Court and the parties that ED had been reviewing the protests and Solicitation "in order to assess its options and to identify the best path forward for the agency and borrowers." Dkt. No. 149 at 1. The Government stated that "ED has reach a point in its analysis where it appears likely that a course of action other than continued litigation of the pending protests will be pursued." *Id.* Notably, the Government had not at that time concluded what action it would take that would obviate this litigation, and it represented that "[a]ll options remain on the table" pending the outcome of its continuing "analysis." *Id.* On May 3, 2018, the Government filed a Notice with the Court indicating ED had decided to cancel the Solicitation. Dkt. No. 188. Apparently as a result of this "analysis," the Government concluded sometime between March 19, 2018, and May 3, 2018, that a "substantial change in the requirements to perform collection and administrative resolution activities on defaulted Federal student loan debts" had occurred, which led it to cancel the Solicitation and terminate for convenience the awards to Windham and Performant. *Id.* at 1. The Government continued:

> In the future, ED plans to significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt. ED expects these enhanced outreach efforts to reduce the volume of borrowers that default, improve customer service to delinquent borrowers, and lower overall delinquency levels. The current private collection agencies (PCA) under contract with ED have sufficient capacity to absorb the number of accounts expected to need debt collection services while the process for transitioning to the new approach is developed and implemented. Therefore, additional PCA contract work is not currently needed.

*Id.* Neither the Government nor ED provided any additional information supporting the cancellation decision.

On May 7, 2018, the Government moved to dismiss the consolidated protests under RCFC 12(b)(1). Dkt. No. 189. The Government attached the cancelation order to is Motion and argued that, with the Solicitation canceled and the protested contracts terminated, the consolidated protests are now moot. *Id.* at 3-4. Arguing that the Court does not have jurisdiction over moot cases without a justiciable issue, the Government contended that the protests should be dismissed. *Id.*

On May 8, 2018, FMS filed a Notice with the Court indicating its intention to oppose the Government's Motion. Dkt. No. 191. On May 16, 2018, FMS filed a Motion for Leave to File a Supplemental Complaint. Dkt. No. 214. FMS's proposed Supplemental Complaint asserted an additional protest ground that ED's cancellation decision was unreasonable and lacked a rational basis, and that the cancellation decision should be enjoined. *See id.* at 4-5. ED has <u>not</u> had a substantial change in in collection requirements. ED is still directed by Congress under the Debt Collection Improvement Act of 1996 (as amended) and Office of Management and Budget ("OMB") Circular A-129 to collect on defaulted student loan debt, and it is a public and verifiable fact that the instances of loan defaults continue to rise. The <u>only</u> asserted basis for the cancellation—despite years of effort and millions spent by FMS and the other PCAs—is an as-yet-undeveloped master plan to have some unidentified party make some unspecified "outreach" to borrowers who are 90-days delinquent in their loan payments. Dkt. No. 181 at 1. This future master plan, according to ED, has "substantially" changed ED's debt collection requirements.

It hasn't. It is patently unreasonable for ED to claim that these unspecified "outreach" efforts alone can so alter the rising tide of student loan defaults as to render the current Solicitation superfluous. In 2015, ED added default and delinquency aversion efforts to the current loan servicing contracts. But given that the default rate continues to rise,[1] these prior efforts obviously

---

[1] From December 2016 through March 2018, the total dollars of defaulted loans assigned to PCAs have increased from $65 billion to $110 billion. PCA collection rates have declined dramatically during this same time period as ED

have failed; and there is no rational basis to suspect that some additional, as-of-yet unplanned and unspecified "outreach" efforts will obviate the services requested by the current Solicitation.  In short, ED still very much needs the services of large PCAs to address the ever-expanding portfolio of defaulted loans.  So it is inconceivable that there is any substantive or meaningful "analysis" supporting ED's cancellation decision or providing it any rational grounding in reality.

FMS's motion for leave is still pending before the Court.

## ARGUMENT

This Court previously has addressed this exact situation, and in those cases, the Court has permitted the plaintiffs to supplement their complaints and proceed with the protest litigation on the supplemental cancellation protest counts rather than dismiss the entire protest as moot.  *See Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124 (2013); *Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673 (2009).  In both *Coastal* and *Madison Services*, plaintiffs had filed protest complaints, only for the agency to subsequently announce cancellation of the solicitations at issue and for the Government to move for dismissal of the actions as moot.  *See Coastal*, 114 Fed. Cl. at 128-129; *Madison Servs.*, 90 Fed. Cl. at 677.  As here, the Government's argument was that because the procurements at issue had been cancelled, there was no longer an active controversy between the parties, thus depriving the court of jurisdiction.

In response to the cancellation decisions, however, plaintiffs sought leave from the Court to supplement their complaints to add a challenge to the cancellation of the solicitation as an additional protest ground and as a cure to the Government's jurisdictional challenge.  *See Coastal*, 114 Fed. Cl. at 132-33; *Madison Servs.*, 90 Fed. Cl. at 677.  As the Federal Circuit has stated, the

has shifted work away from large business PCAs and placed more defaulted accounts with small business PCAs. Given the decline in large business PCA participation, collections each quarter have remained at approximately $2 billion despite the total portfolio of defaulted loans nearly doubling.

"Supreme Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)).  In both cases, the Court granted plaintiffs leave to file their supplemental complaints and pursue the litigation under the cancellation protest ground.  As explained by the Court, even if the plaintiffs' original protest allegations were mooted by the cancellation decision, the new cancellation protest ground presented a "justiciable controversy within the court's jurisdiction," obviating the mootness challenge and presenting a live controversy.  *See Madison Servs.*, 90 Fed. Cl. at 683.  As the Court in *Coastal* summarized, regardless of the mootness of the initial protest grounds, because the plaintiff "is not legally barred from curing, with a supplemental complaint, the jurisdictional defect arising from the cancellation of the procurement that was the subject of this protest," and because "there is precedent in support of the court's ability to entertain protests challenging an agency's decision to cancel a procurement," leave to file a supplemental complaint was proper and Government's motion to dismiss the entire litigation should be denied.  *Coastal*, 114 Fed. Cl. at 132-33.

The Court should apply the same reasoning here.  While FMS's initial Complaint challenged ED's evaluation and selection decisions, FMS now seeks to supplement its Complaint with an additional challenge to ED's irrational cancellation decision.  *See* Dkt. No. 214.  This cancellation challenge presents a justiciable controversy within the Court's jurisdiction that is ripe for the Court's review.  *See, e.g.*, *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503 (2011) (cancellation of procurement lacked rational basis and permanent injunction rescinding cancellation was warranted).  As a result, regardless of the continuing viability of FMS's initial protest grounds, FMS has sought to assert a valid basis of protest, which means the present protest is not moot, and dismissal of the entire protest is unwarranted.

Further, as the Court discussed in both *Madison Services* and *Coastal*, dismissing FMS's entire protest as moot would elevate formality over substance and violate the spirit of the Court's rules regarding amended pleadings.  It would be both judicially and practically inefficient to deny FMS's request to supplement its protest and grant the Government's Motion to dismiss the instant action in its entirety because FMS is able to file the exact same complaint as a separate action.  Such a new filing would serve only to reinitiate the exact same dispute between the exact same parties with the exact same background facts as are already present here.  And, in the event FMS succeeds on the merits of its supplemental protest ground and the Court enjoins ED's cancellation of the Solicitation, ED's most recent evaluation will be the same, error-riddled procurement record that FMS initially protested.  In other words, if FMS succeeds, the parties may be back in a similar posture to the one that led to this protest in the first place.

Given that FMS and the other PCAs have competed *for years* for this contract and suffered unfairly under ED's treatment, the least they are owed is the most expeditious review of ED's most recent (unreasonable) action.  Thus, the Court should grant FMS leave to supplement its Complaint, deny the Government's motion to dismiss the protest as moot, and proceed to merits of FMS's cancellation challenge.

## CONCLUSION

For the forgoing reasons, FMS respectfully requests that the Court deny the Government's Motion to Dismiss.  With leave to file its Supplemental Complaint, FMS's protest is not moot and presents a justiciable controversy for the Court's resolution.  FMS also respectfully requests that the Court maintain the preliminary injunction previously entered in this case to maintain the status quo between the parties pending review of ED's most recent procurement action.  As before, ED's recall of FMS's in-repayment accounts threatens the viability of FMS as a going business concern

whereas ED can produce no evidence of any harm from maintaining the injunction while the Court reviews the cancellation decision.

Respectfully submitted,

/s/ David R. Johnson
David R. Johnson
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500
Facsimile: (202) 639-6604
Email: drjohnson@velaw.com

*Lead Attorney for Plaintiff*
*FMS Investment Corp.*

*Of counsel:*
Tyler E. Robinson
Ryan D. Stalnaker
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500
Facsimile: (202) 639-6604
Email: trobinson@velaw.com

Dated: May 18, 2018

*Attorneys for Plaintiff*
*FMS Investment Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 18, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record in this matter who are registered with the Court's CM/ECF system.

/s/ David R. Johnson
David R. Johnson