## THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

|  |  |  |
|---|---|---|
| FMS INVESTMENT CORP., *et al.* | : | |
| | : | |
| | : | |
| v. | : | No. 18-204C; 18-206C, 18-207C, |
| | : | 18-208C, 18-211C, 18-214C, |
| UNITED STATES, | : | 18-216C, 18-220C, 18-229C |
| | : | (consolidated) |
| Defendant, | : | |
| | : | Judge Wheeler |
| PERFORMANT RECOVERY, INC., *et al.*, | : | |
| | : | |
| Defendant-Intervenors | : | |

## PLAINTIFF VALUE RECOVERY HOLDING, LLC'S
## OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS

Plaintiff, Value Recovery Holding, LLC ("VRH") respectfully opposes Defendant's Motion to Dismiss this protest. (ECF 189).  This Motion follows Defendant's Notice, filed with the Court on May 3, 2018 (ECF 188), which provided, at best, a cryptic description of why the U.S. Department of Education ("ED" or the "Agency") suddenly decided to cancel the Solicitation.  In short, the Notice is defective in its sheer vagueness as well as its timing, and is arbitrary and capricious. Moreover, it is obvious from the face of the Notice as well as other circumstances surrounding this procurement that Defendant is cancelling the Solicitation principally to avoid the continued protests filed in the wake of a botched procurement process.[1]

The Notices states, in relevant part:

The solicitation will be cancelled due to a **substantial change** in the requirements to perform collection and administrative resolution activities on defaulted Federal student loan debts. **In the future**, ED plans to **significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt.** ED expects these enhanced outreach efforts to reduce the volume of borrowers that default, improve customer

---

[1] VRH supports the arguments set forth by other interested parties also opposing the Motion to Dismiss.

service to delinquent borrowers, and lower overall delinquency levels. **The current private collection agencies (PCA) under contract** with ED have sufficient capacity to absorb the number of accounts expected to need debt collection services while the process for transitioning to the new approach is developed and implemented. Therefore, additional PCA contract work is not currently needed. [Emphasis added.]

This Notice does not explain what "substantial change" occurred to warrant cancellation of the Solicitation (and we believe there were none) and provides no detail as to how Defendant will address the Agency's future no less current critical needs with respect to servicing millions of defaulted student loans. The Notice indeed provides no detail or even a basic description of what it means in looking to "in the future . . . enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt."[2]  Curiously, the Notice, which includes the statement that "additional PCA contract work is not currently needed," comes only months after ED decided to award seven PCA contracts (a reduction from 17), then just two contracts after additional multiple protest filings, and now no contracts.[3]

In addition, the Notice states that the "current private collection agencies (PCA) under contract with ED have sufficient capacity to absorb the number of accounts expected to need debt collection services while the process for transitioning to the new approach is developed and implemented."  This is despite Defendant knowing full well that the only PCA awardees left standing at this point which are permitted to absorb new collection accounts are a handful of small

---

[2] If ED is referring to its Next Generation Financial Services Environment, then there is no explanation as to how this initiative, apparently in its infant stage, will displace PCAs in particular or the student defaulted loan collection process in general. Moreover, the Notice provides no information as to how and when ED would implement this new "plan" or the basis for believing that a single contact to a defaulted borrower after 90 days would resolve the already backed-up collection process.

[3] This entire debacle started with the 2014 awards of 11 small business set aside PCA contracts, followed by the 2015 protests filed in *Coast Professionals v. United States* following the 2009 unrestricted awards of 17 PCA contracts and awards five small business contracts, followed by the 2016 unrestricted awards of seven PCA contracts which were protested before the GAO and this Court, followed by the current protests of only two awards made in January 2018. After all of these protests (to include its associated appeal), the latest in which this Court concluded that the protesters were "likely to succeed on the merits of their bid protests" (ECF 126), as well as and several attempts at corrective action, ED's only answer now is to abruptly cancel the Solicitation.

businesses from a 2014 procurement who are likely unable to handle the multitude of active and continually increasing defaulted loans.  This is also despite this Court previously enjoining awards to small businesses during the pendency of the protests, which was made moot only after ED took corrective action to re-issue the Solicitation and seek new proposals. Further, since 1981, ED has contracted with PCAs for services related to resolving defaulted student loans, but now fails to explain how this will end "in the future" (or when in the future) without relying on PCAs to manage these defaulted loans.  Put another way, the Notice is a culmination of a procurement process that has been a disgrace for over two years, and ED's decision to simply just walk away from the procurement under these circumstances should not be accepted by this Court.

Moreover, how ED will manage relying on the existing small business PCAs in the interim, if that's what the Notice really means, is suspect on its face just from ED's own statistics.  In 2017 alone, more than 17 million borrowers have federal student loans in default, with the amount in default topping approximately $310 Billion.[4] And as pointed out by the Federal Circuit in a related case, over 100,000 borrowers continue to default each month.  *Continental Service Group Inc. v. United States,* 2017-2155, *et seq.* (Jan. 12, 2018), at 17.  Defendant has not explained how ED will be able to follow its statutory mandate under the Higher Education Act of 1965, 20 U.S.C. §§ 1091 *et seq.*,  and related laws to assist borrowers to resolve their student debts through loan consolidation and rehabilitation without the use of PCAs or some other valid collection mechanism and loan default management system, except to state vaguely at best that it "plans to significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage

---

[4] *See* U.S. Department of Education, *Federal Student Loan Portfolio* (accessed Sept. 14, 2016), https://studentaid.ed.gov/sa/about/data-center/student/portfolio.

their Federal student loan debt."[5]  Vague "Government-ese" and double talk should not equal a valid corrective action in this case.

More pointedly, Defendant offers no rationale no less any documentation to support its sudden decision to cancel the Solicitation.  It has become a well-established principle in federal procurement law that agencies taking corrective action in response to bid protests must identify and document a rational basis to support the specific corrective actions to be taken.  Here, however, nothing in the Notice properly addresses the basis of the Agency's decision or how, with any specificity, the Agency's needs will be addressed going forward so that the Notice cannot logically moot the protests.  Merely stating that corrective action in the form of cancelling the Solicitation will be taken without explaining a proper basis for that decision does not rise to the level of rationality required in such actions. *See Starry Associates, Inc. v. United States*, 127 Fed. Cl. 539, 549 (2016) (Because there is no evidence that the agency undertook any meaningful review of its needs before cancelling the solicitation, the court concluded that its decision was arbitrary and capricious. "Although we view independently the bona fides of the cancellation decision, we note that it punctuates a series of actions which reflect a lack of fidelity to the procurement process."); *WHR Group, Inc. v. United States,* No. 13-515C, 2014 WL 1377819 (Fed. Cl. March 21, 2014) (FBI's corrective action failed to state a rational basis for its decision to cancel the procurement, finding that some of the FBI's asserted bases were no more than "bald assertions."); *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503 (2011) (cancellation of procurement lacked rational basis and permanent injunction rescinding cancellation was warranted). *See also Systems Application & Technologies, Inc. v. U.S.*, 100 Fed. Cl. 697, 722 (2011), *aff'd*, 691 Fed. Cir. 2012) ("Under this standard,

---

[5] ED has indeed interpreted the collection of defaulted student loans as a statutory requirement.  *See, e.g., Continental Serv. Grp., Inc. v. United States*, No. 17-449 *et al.* Dkt. No. 157 at 16-17 (ED seeking stay of prior injunction "because the Court's preliminary injunctions interfere with Education's authority and ability to procure necessary services in order to meet its congressionally mandated responsibilities").

the court may set aside a procurement action if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.") (citations omitted).

VRH further asserts that the Agency is cancelling this procurement merely to avoid competition in the face of multiple protests. Such cancellations as a mere pretext to avoid such competition and protest actions have been held to be irrational.[6]  For instance, in *Starry Associates, Inc., supra*, the Court found that an agency lacked a rational basis for canceling a solicitation rather than undertaking the corrective action recommended by the GAO in response to prior protests. The Court determined that the agency had not justified its decision to cancel the solicitation because there was no evidence in the record that the agency had taken meaningful steps to reassess its needs prior to canceling the solicitation.  *See also, Overstreet Elec. Co., v. United States*, 47 Fed. Cl. 728, 732 (2000) ("[A]n award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.").[7]

Likewise, here, ED has not justified its decision to cancel the Solicitation. Instead, this is just the latest in a series of irrational maneuvers to avoid moving forward with contracts that are, in essence, critically important under federal statute.

Finally, ED's action here is particularly harmful to VRH, the only non-incumbent awardee in the 2016 procurement, who has incurred substantial expense to bid on this procurement and pursue this protest only for ED to abruptly cancel the Solicitation for no valid reason.

---

[6] There are a number of reports that Dr. A. Wayne Johnson, ED's COO, has stated openly that any further protests would result in cancellation of the procurement.

[7] The GAO has applied a similar standard. For example, in *Walker Development & Trading Group, Inc.*, B-413924, 2017 CPD ¶ 21 (Jan. 12, 2017), the GAO sustained a challenge to an agency's decision to cancel a solicitation when the agency failed to produce an agency report that coherently articulated its rationale for cancellation. *See also, Medfinity LLC*, B-413450 (September 9, 2016) (cancellation of a solicitation as merely a pretext for an agency to avoid awarding a contract on a competitive basis, or to substantively rule on the merits of a protest, requires heightened scrutiny)

For the foregoing reasons, VRH respectfully requests that the Court deny Defendant's Motion to Dismiss. ED's abrupt and unsupported cancellation of the Solicitation is arbitrary and capricious and should be enjoined. VRH requests further that the Court order the Agency to supplement the existing Administrative Record to produce documents justifying the reasonableness of ED's decision to cancel the Solicitation, explain its changing course with respect to the PCAs and demonstrate that the action it seeks to take reflects the agency's valid reassessment of its needs. Absent a valid explanation, ED should be compelled to reevaluate VRH's proposal and make a new award determination. *Starry Associates, Inc.,* 127 Fed. Cl. at 554.[8]

Dated: May 18, 2018                          Respectfully submitted,


                                             s/ James C. Fontana
                                             James C. Fontana, Esq.
                                             *Counsel of Record*
                                             David B. Dempsey, Esq.
                                             Jeffry R. Cook, Esq.
                                             L. James  D'Agostino, Esq.
                                             **DEMPSEY FONTANA, PLLC**
                                             8133 Leesburg Pike, Suite 500
                                             Tysons Corner, VA 22182
                                             (703) 880-9172 (Phone)
                                             (703) 880-9185 (Facsimile)
                                             jfontana@deftlaw.com (Email)

                                             *Counsel for Value Recovery Holding, LLC*

---

[8] VRH also reserves its right to file a supplemental complaint challenging the Agency's cancellation of the Solicitation.

## CERTIFICATE OF FILING

I certify that a true and correct copy of the foregoing was served on all parties electronically via the CM/ECF system on this 18th day of May 2018.


 s/ James C. Fontana
James C. Fontana