**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

|  |  |  |
|---|---|---|
| FMS INVESTMENT CORP., *et al.*, | ) | |
| | ) | Nos. 18-204C, *et al.* |
| Plaintiff, | ) | |
| | ) | Judge Wheeler |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PERFORMANT RECOVERY, INC., *et al.* | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**PLAINTIFF GC SERVICES'**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

William M. Jack
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC  20007-5108
(202) 342-8521
(202) 342-8451 (Fax)
wjack@kelleydrye.com

*Attorney for Plaintiff GC Services Limited Partnership*

Of Counsel:

William C. MacLeod
David E. Frulla
Amba M. Datta
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC  20007-5108
(202) 342-8400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 1

III.   ARGUMENT................................................................................................... 4

       A.    The Court Has Continuing Jurisdiction over Plaintiff's Challenge to the Department of Education's Decision to Cancel this Procurement.......................... 4

       B.    Defendant's Motion to Dismiss Should Be Denied Because This Case is Not Moot................................................................................................. 7

       C.    The Preliminary Injunction Should Remain in Place ........................................... 12

IV.   CONCLUSION............................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ala. Aircraft Indus., Inc. v. United States*,
586 F.3d 1372 (Fed. Cir. 2009)..............................................................................5

*Beta Analytics Int'l, Inc. v United States*,
75 Fed. Cl. 155 (2007) ........................................................................................11

*BLR Grp. of Am., Inc. v. United States*,
94 Fed. Cl. 354 (2010) ..........................................................................................7

*Ceres Envtl. Servs., Inc. v. United States*,
97 Fed. Cl. 277 (2011) ..........................................................................................5

*Chapman Law Firm v. Greenleaf Constr. Co.*,
490 F.3d 934 (Fed. Cir. 2007)................................................................................7

*Coastal Envtl. Grp., Inc. v. United States*,
114 Fed. Cl. 124 (2013) ........................................................................................5

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979)...............................................................................................7

*FFTF Restoration Co., LLC v. United States*,
86 Fed. Cl. 226 (2009) ..........................................................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...............................................................................................7

*Impresa Construzioni Geom. Domenici Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001)..............................................................................5

*Klinge Corp. v. United States*,
83 Fed. Cl. 773 (2008) ........................................................................................11

*Litton Sys., Inc. v. Sundstrand Corp.*,
750 F.2d 952 (Fed. Cir. 1984)..............................................................................13

*Madison Servs., Inc. v. United States*,
92 Fed. Cl. 120 (2010) ..........................................................................................5

*McTECH Corp. v. United States*,
105 Fed. Cl. 726 (2012) ......................................................................................11

*Mori Associates v. United States*,
    102 Fed. Cl. 503 (2011) ....................................................................................5, 6, 12, 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................................................6

*NEC Corp. v. United States*,
    151 F.3d 1361 (Fed. Cir. 1998) ....................................................................................7

*Parcel 49C Ltd. P'ship v. United States*,
    31 F.3d 1147 (Fed. Cir. 1994) ......................................................................................6

*In re Sang-Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) ....................................................................................6

*Serco, Inc. v. United States*,
    101 Fed. Cl. 717 (2011). .............................................................................................13

*Starry Assocs. v. United States*,
    127 Fed. Cl. 539 (2016) ................................................................................................6

*The CBE Grp., Inc. v. United States*,
    No. 17-1970 (Fed. Cl. May 3, 2018)............................................................................9

*Veterans Contracting Grp., Inc. v. United States*,
    135 Fed. Cl. 610 (2017) ..............................................................................................11

## **STATUTES**

5 U.S.C. § 706 ....................................................................................................................5

28 U.S.C. § 1491(b)(1) .......................................................................................................5

## **REGULATIONS**

FAR 1.102(b)(3) ..................................................................................................................5

FAR 1.02-2(c)(3) ...........................................................................................................5, 13

## **RULES**

RCFC 7.2(b) ........................................................................................................................1

RCFC 15(d) .........................................................................................................................7

## I.        INTRODUCTION

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff GC Services Limited Partnership ("GC Services") hereby submits this Opposition to Defendant's Motion to Dismiss (ECF 189).  As detailed below, GC Services respectfully requests that the Court deny the Motion to Dismiss because (1) the Court has continuing jurisdiction over GC Services' challenge to the decision by the Defendant, the United States, acting by and through the U.S. Department of Education ("ED" or "the Agency") to cancel Request for Proposals ED-FSA-16-R-0009 ("the RFP"); (2) this case is not moot[1]; and (3) the preliminary injunction entered by this Court on February 26, 2018 should remain in place pending the resolution of these protests.

## II.       BACKGROUND

On February 9, 2018, GC Services filed a bid protest complaint in this court challenging ED's arbitrary, capricious, and unlawful evaluation and award of two contracts to Performant Recovery, Inc. ("Performant") and Windham Professionals, Inc. ("Windham") in connection with the RFP.  GC Services alleged that ED conducted a flawed evaluation of GC Services' past performance and management approach that was inconsistent with the RFP evaluation criteria, unreasonable, and arbitrary and capricious (Counts I and II).  GC Services also alleged that the Agency's evaluation of GC Services' and the awardees' under past performance reflected disparate treatment and was inconsistent with the RFP evaluation criteria (Count III) and that ED's evaluation of the awardees' management approaches was inconsistent with the RFP, unreasonable, and arbitrary and capricious (Count IV).  Finally, GC Services alleged that ED's

---

[1] GC Services filed a Motion for Leave to File a Supplemental Complaint on May 18, 2018, attaching its Supplemental Complaint for Declaratory and Injunctive Relief as Exhibit A.

source selection decision was unreasonable and arbitrary and capricious based on a flawed underlying evaluation (Count V).

Eighteen other plaintiffs have filed complaints with this Court in connection with ED's improper evaluation under the RFP, and their protests were consolidated under *FMS Investment Corp., et al. v. United States*, Nos. 18-204C, *et al.*

On February 12, 2018, GC Services filed a motion for a temporary restraining order and preliminary injunction requesting that the Court enjoin ED's proposed recall of GC Services' in repayment in retention accounts, which GC Services was continuing to service following the expiration of its award term extension ("ATE") contract in 2017. The Court entered a scheduling order on February 13, 2018, requiring production of the administrative record and motions for judgment on the administrative record. The Court also ordered the production of "core documents" on February 16, 2018 and scheduled a hearing on the motions for temporary restraining order and preliminary injunction filed by GC Services, as well as consolidated plaintiffs FMS Investment Corp. ("FMS"), Account Control Technology, Inc. ("ACT"), and Continental Service Group, Inc. ("ConServe") on February 21, 2018.

On February 26, 2018, the Court issued an opinion and order entering a preliminary injunction in Case Nos. 18-204C, 18-206C, 18-208C, and 18-246C. The Court issued a redacted opinion and order on March 6, 2018, stating that "in order to preserve the status quo, the Court must maintain the state of affairs that existed before Plaintiffs filed their complaints in this consolidated bid protest. That state of affairs includes Plaintiffs retaining and servicing the accounts under their unexpired in repayment retention periods provided for by their 2015 ATEs." ECF 126. The Court also concluded that the weight of the preliminary injunction factors favored granting injunctive relief. Specifically, the Court was "convinced that Plaintiffs are likely to

succeed on the merits of their bid protests" based on "serious concerns" over ED's evaluation of proposals, including "[t]he evidence currently before the Court [which] points to inconsistencies, omissions, unequal treatment of offerors, and cherry-picked data that the Court finds to be rather problematic." *Id.*   The Court also concluded that plaintiffs would be immediately and irreparably harmed if ED recalled accounts currently in the in repayment retention period based on their greatly diminished ability to compete for the procurement and significant impact on their businesses.  With regard to the balance of hardships, the Court found that this factor too weighed in plaintiffs' favor based on ED's ability to transfer accounts to other contracts, continued servicing of the in repayment retention accounts, and the risk to the plaintiffs of losing their viability as businesses.  *Id.*  The Court concluded that the last factor was neutral, but that the other three factors weighed heavily in plaintiffs' favor, and therefore injunctive relief was appropriate. *Id.*

On March 19, 2018, ED filed a Notice with the Court indicating that "it appears likely that a course of action other than continued litigation of the pending protests will be pursued." ECF 149.  The Notice stated that ED had not made a final decision, "[a]ll options remain on the table," and "ED has been reviewing this solicitation in order to assess its options and to identify the best path forward for the agency and borrowers." *Id.*

On March 20, 2018, Plaintiffs FMS, ACT, GC Services, and ConServe filed a response to the Government's March 19th Notice, requesting that the Agency announce the specific terms of its proposed corrective action by a certain, specified date; establish a firm deadline for completion of the announced corrective action; designate a responsible ED official to be present at a status hearing to ensure the corrective action stays on track; and maintain the current

preliminary injunction through the entirety of the corrective action and any subsequent protests.

ECF 153.

Following the filing of several additional Notices, Defendant filed a Notice on May 3, 2018 announcing that the solicitation would be cancelled and the awards to Performant and Windham terminated for convenience on or after May 7, 2018.  The Notice stated:

> The solicitation will be cancelled due to a substantial change in the requirements to perform collection and administrative resolution activities on defaulted Federal student loan debts. In the future, ED plans to significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt. ED expects these enhanced outreach efforts to reduce the volume of borrowers that default, improve customer service to delinquent borrowers, and lower overall delinquency levels. The current private collection agencies (PCA) under contract with ED have sufficient capacity to absorb the nnumber of accounts expected to need debt collection services while the process for transitioning to the new approach is developed and implemented. Therefore, additional PCA contract work is not currently needed.

ECF 188.

On May 7, 2018, ED issued Amendment 0009 cancelling the RFP.  ED also announced on the Federal Business Opportunities website that the contracts awarded to Performant and Windham on January 11, 2018 had been terminated for the convenience of the Government.

Also on May 7, 2018, Defendant filed a Motion to Dismiss requesting that this Court dismiss the consolidated bid protests as moot in light of ED's decision to cancel the solicitation. ECF 189.  Defendant also requested that the Court lift the February 26th preliminary injunction. *Id.* at 4.

## III.   ARGUMENT

### A.   The Court Has Continuing Jurisdiction over Plaintiff's Challenge to the Department of Education's Decision to Cancel this Procurement

This Court has continuing subject matter jurisdiction over this bid protest to review whether the Department of Education has engaged in a violation of statute or regulation in

canceling the procurement.  Under the Tucker Act, the Court of Federal Claims has jurisdiction over a violation of statute or regulation in connection with a procurement.  28 U.S.C. § 1491(b)(1); *see also Impresa Construzioni Geom. Domenici Garufi v. United States*, 238 F.3d 1324, 1330 (Fed. Cir. 2001).  The Court's bid protest jurisdiction includes the authority to review cancellations of negotiated procurements.  *See FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 236-37 (2009) (finding that the Court has jurisdiction under 28 U.S.C. § 1491(b)(1) to consider plaintiff's challenge to agency decision to cancel negotiated procurement to ensure compliance with the requirements of "integrity, fairness, and openness" in FAR 1.102(b)(3) and the requirement that "[a]ll contractors and prospective contractors shall be treated fairly and impartially" in FAR 1.02-2(c)(3)).

The Court of Federal Claims has exercised jurisdiction over challenges to an agency's cancellation decision in the context of a pending bid protest where the agency's decision to cancel was taken while the bid protest was pending at the Court.  *See e.g.*, *Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124, 135 (2013); *Mori Associates v. United States*, 102 Fed. Cl. 503 (2011); *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120 (2010).

The Court reviews a challenge to an agency cancellation decision according to the standards enunciated in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See FFTF Restoration Co.,* 86 Fed. Cl. at 244.  An agency action is arbitrary and capricious when the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Ceres Envtl. Servs., Inc. v. United States*, 97 Fed. Cl. 277, 302 (2011) (quoting *Ala.*

*Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)).  An agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *In re Sang-Su Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

Accordingly, an Agency's decision to cancel a procurement may be set aside if it is found to lack a rational basis or otherwise not be in accordance with the law.  *See Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147 (Fed. Cir. 1994) (affirming Court of Federal Claims' decision to award injunctive relief to remedy Government's illegal cancellation of a solicitation where the cancellation lacked proper legal basis and "the Government's justifications for cancellation of the procurement were pretextual and incredible"); *Starry Assocs. v. United States*, 127 Fed. Cl. 539, 550 (2016) (concluding that "the record contains no basis on which the agency can pin the rationality of its decision to cancel" and therefore that the agency acted arbitrarily and capriciously in cancelling the solicitation); *Mori Associates v. United States*, 102 Fed. Cl. 503 (2011) (enjoining agency from cancelling a solicitation where the agency lacked a rational basis for its decision).

In its proposed Supplemental Complaint, GC Services alleges that ED's cancellation of the procurement is arbitrary, capricious, constitutes an abuse of discretion, and is otherwise contrary to law and should be enjoined by this Court.  GC Services therefore respectfully requests that the Court deny Defendant's Motion to Dismiss and retain jurisdiction of this matter.

**B.      Defendant's Motion to Dismiss Should Be Denied Because This Case is Not Moot**

Contrary to Defendant's assertion in its Motion to Dismiss, GC Services' protest is not moot.  GC Services has filed a motion for leave to file a supplemental pleading pursuant to Rule 15(d), attaching GC Services' proposed Supplemental Complaint.  In its proposed Supplemental Complaint, GC Services alleges that the Agency's cancellation decision is arbitrary, capricious, an abuse of discretion, and contrary to law.  Suppl. Compl., Count VI.  GC Services further alleges that Defendant also failed in its duty to consider GC Services' proposal fairly and honestly and not in an arbitrary and capricious manner by cancelling the RFP.  *Id.*  Accordingly, because this case presents justiciable issues upon which this Court can render a decision, it is not moot.

Defendant's Motion to Dismiss does not meet its formidable burden to demonstrate that a case is moot.  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).  The salient question is whether the Agency's cancellation decision "completely and irrevocably eradicated the effects of the alleged violation."  *Chapman Law Firm v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  The Court of Federal Claims has recognized that "a case will not be rendered moot by subsequent acts if some of the requested relief remains available."  *BLR Grp. of Am., Inc. v. United States*, 94 Fed. Cl. 354, 362 (2010) (quotations omitted).  Courts have also acknowledged that a case may not be moot "even if an intervening event satisfies some of the plaintiff's concerns . . . if other consequences of defendant's actions remain."  *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("Because the trial court could still fashion a

useful remedy in this case by granting prospective relief from the effects of the antidumping order, the case is not moot.").

ED's cancellation decision does not eradicate the effects of alleged violations in this procurement, and GC Services' proposed Supplemental Complaint challenging ED's decision to cancel the RFP serves as a continuing basis for relief.  For the reasons set forth below, ED's decision to cancel is arbitrary and capricious and contrary to law based on (1) publicly available evidence indicating that there has been no substantial change in the Agency's requirements based on its utilization of current PCA contracts to obtain default collection services and ED's stated intent to conduct a recompete of the small business procurement this year; (2) ED's proposed solution of enhancing loan servicers' outreach efforts at the 90-day mark has not been developed or implemented and yet serves as the sole justification for overhauling the federal student aid program; and (3) ED's proposed solution runs counter to the evidence that loan servicers cannot effectively replace PCAs as they perform different functions; the loan servicing industry is plagued with customer complaints and allegations of illegal conduct, which does not support the proposition that their outreach efforts will reduce defaults; and publicly available data shows that student loan default rates are rising, which renders ED's decision to cancel a procurement for default collection services arbitrary and capricious.

First, contrary to ED's assertions, there has been no "substantial change" in ED's requirements to support the Agency's decision to cancel this procurement.  (ECF 188).  As Defendant's March 3rd Notice itself acknowledges, ED is planning to use "current private collection agencies (PCA) under contract with ED" for default collection services, which necessarily means that the Agency has a continuing need for these services.  In addition, for the last five years, ED has tried to make contract awards in an unrestricted follow-on procurement to

the 2009 task orders, even though the current small business PCA contracts were awarded in 2014.  ED's repeated attempts to obtain default collection services from large PCAs are contrary to its statement that it can rely on the current PCA contracts.   Moreover, contrary to the Department's representations, ED is not planning to use only the "current" PCA contracts to handle collection services.   ED has announced in a publicly available forecast of FY 2018 Contract Opportunities on its website that it will be recompeting the small business contract for default collection services in the third quarter of 2018.   *See* Suppl. Compl., Attachment A, Forecast of Ed Contract Opportunities (Feb. 20, 2018), available at https://www2.ed.gov/fund/contract/find/forecast.html (last visited May 14, 2018).   ED's continued reliance on existing PCA contracts and plan to issue a new solicitation for default collection services demonstrates that the Agency still requires contractors to perform debt collection services, and that those needs will not be satisfied by the current contracting vehicles. Moreover, the timing of ED's decision indicates that the Agency has failed to perform a meaningful review of its needs.  On May 2, 2018, the Department of Justice stated at a hearing in another bid protest challenging the new ATE contracts that plaintiff-protester CBE Group already was receiving what it was suing for, specifically an opportunity to compete for a new PCA contract under this solicitation.  *See* The CBE Group, Inc. Notice of Agency Action, *The CBE Grp., Inc. v. United States*, No. 17-1970 (Fed. Cl. May 3, 2018) (ECF 27).  One day later, ED announced it was cancelling the RFP.  Accordingly, the Agency failed to conduct a careful analysis of its requirements.

Second, ED's cancellation decision is arbitrary, capricious, and irrational because it is based on a future plan to enhance the engagement of its loan servicers with borrowers at the 90-day delinquency mark.  No concrete measures have been taken to implement this approach.  The

March 3rd Notice acknowledges that the strategy has not even been developed, let alone executed.  It states, in relevant part: "The current private collection agencies (PCA) under contract with ED have sufficient capacity to absorb the number of accounts expected to need debt collection services **while the process for transitioning to the new approach is developed and implemented**." (ECF 188) (emphasis added).  Tellingly, ED has provided no timeline for the development of its new approach.  Moreover, to the extent the enhanced engagement efforts ED references in the Notice relate to the Agency's program for developing a "Next Generation Financial Services Environment," the RFP issued by the Agency for Phase I of the procurement on February 20, 2018 does not identify enhanced outreach efforts at the 90-day mark, and is, in any event, a long way from implementation.  Proposals were due in response to the RFP on April 18, 2018.  Once ED selects vendors for Phase I, which seeks vendors for components of a digital platform that will modernize and improve the customer experience through the student financial aid lifecycle and develop solutions specifically for processing and servicing, the vendor will be required to develop the system architecture, and deployment will not occur for years.  Accordingly, ED's cancellation decision is based on a mere proposal that is nowhere near execution.

Third, ED's cancellation decision runs counter to publicly available evidence indicating that loan servicers and PCAs fulfill different roles in the federal student aid lifecycle and loan servicers cannot replicate PCA functions by making a call at the 90-day mark; the loan servicing industry has been beset by borrower complaints and characterized by alleged illegal conduct that has damaged borrowers; loan servicers' contracts do not properly incentivize them to provide enhanced servicing activity to keep borrowers out of default; and ED's data shows that the number of borrowers entering default is increasing.  In sum, ED's proposed strategy is contrary

does not demonstrate that the Agency has made a rational connection between this data and its solution of requiring loan servicers to place a call to borrowers at the 90-day mark in deciding to cancel the RFP.

In sum, the cancellation of the RFP appears to be a pretext to avoid the litigation of this procurement and conduct an evaluation under the RFP consistent with the stated evaluation factors and in accordance with applicable law.  Because the Agency's decision was arbitrary and capricious and GC Services' Supplemental Complaint states a claim upon which relief may be granted, this case is not moot.  *See McTECH Corp. v. United States*, 105 Fed. Cl. 726, 732 (2012) (denying motion to dismiss on mootness grounds where amended complaint stated a potentially viable challenge to corrective action).

Even if the Court concludes that GC Services is not entitled to injunctive relief, the Court may award bid preparation and proposal costs, and therefore this case should not be dismissed on mootness grounds.  *See Beta Analytics Int'l, Inc. v United States*, 75 Fed. Cl. 155, 159 (2007); *see also Veterans Contracting Grp., Inc. v. United States*, 135 Fed. Cl. 610, 620 (2017) (awarding bid proposal and preparation costs to a protester challenging agency's decision to cancel a solicitation); *Klinge Corp. v. United States*, 83 Fed. Cl. 773, 780 (2008) (granting plaintiff's request for reimbursement of its bid preparation and proposal costs following agency's apparent cancellation of RFP).  GC Services' proposed Supplemental Complaint includes a claim for bid preparation and proposal costs upon which relief can be granted.  Dismissal is therefore not appropriate.

Therefore, because the propriety of the Agency's cancellation of the solicitation presents a live, concrete controversy, this case is not moot. The Court should deny Defendant's Motion to Dismiss.

**C.      The Preliminary Injunction Should Remain in Place**

GC Services respectfully requests that this Court deny Defendant's request in its Motion to Dismiss to lift the February 26th preliminary injunction entered by this Court.  For the reasons detailed below, the preliminary injunction should remain in place to preserve the status quo until this Court has rendered a judgment on the propriety of ED's decision to cancel this procurement.

First, as detailed above, the Court has continuing jurisdiction over this case to adjudicate GC Services' challenge to the propriety of ED's decision to cancel this procurement.   In its Opinion and Order Granting Preliminary Injunction, this Court concluded that ED was enjoined from recalling borrower accounts assigned to GC Services, FMS Investment Corp., Account Control Technology, Inc., and Continental Service Group, Inc. "from the date and time of this Opinion and Order **until the Court has fully resolved this consolidated bid protest**."  (ECF 126) (emphasis added).  GC Services' proposed Supplemental Complaint properly states a new claim for relief in connection with ED's cancellation decision.   Therefore, the Court should maintain the preliminary injunction until it has addressed GC Services' requests for relief.

Second, the irreparable harm to GC Services caused by ED's decision to cancel, the balance of hardships, and the public interest supports continuing the preliminary injunction.  GC Services will suffer irreparable harm as a result of ED's decision to cancel based on the loss of its opportunity to compete for the work under the RFP and the loss of the profits it would have earned had it been successful in the competition.  *See Mori Assocs.*, 102 Fed. Cl. at 154-55 (concluding that loss of an opportunity to compete for work under a cancelled solicitation as well as the loss of profits a protester would have earned had it been successful in the competition constitute irreparable injury).   Here, maintaining the preliminary injunction will prevent any

adverse impact upon GC Services' ability to perform if the cancellation is enjoined and the parties return to the position they were in prior to ED's decision to cancel the RFP.

Furthermore, there will be little to no harm to the Government if injunctive relief is granted.  ED may transfer new accounts to other contracting vehicles (as it acknowledges it will do in the May 3rd Notice), and the accounts currently serviced by Plaintiffs will continue to be serviced in the in repayment retention period of their contracts.  Therefore, the balance of hardships still weighs in GC Services' favor.

The public interest is better served if offerors are given the fair treatment required by FAR 1.602-2(b) than if agencies may cancel solicitations without a rational basis.  *See Mori Assocs.*, 102 Fed. Cl at 159.  In addition, borrowers will continue to benefit from having top performers like GC Servicers assist them in getting out of default through structured rehabilitation plans.

Third, the preliminary injunction should also remain in place to preserve the status quo. *See e.g., Serco, Inc. v. United States*, 101 Fed. Cl. 717, 721 (2011) (granting temporary restraining order to preserve the status quo ante where plaintiff was the incumbent contractor and had raised substantial questions regarding the merits of the agency's award decision).  As this Court has recognized, the function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits.  *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984).  Further, "the status quo to be preserved is that state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy." *Litton Sys. Inc.*, 750 F.2d at 961.  The status quo prior to ED's decision to cancel was for the 2015 ATE contract-holders to service accounts assigned to them for collection during their ordering period until the end of the in repayment retention period.

Should GC Services prevail on its allegation that ED's cancellation decision was unreasonable, the Court may enjoin the cancellation, effectively returning this procurement to its pre-cancellation status.  Keeping the injunction in place in the intervening period will prevent the same detrimental effects the Court recognized in its February 26th Opinion and Order and permit GC Services' to maintain its competitive position.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff GC Services respectfully requests that the Court deny Defendant's Motion to Dismiss.  GC Services has established that the Court may continue to exercise jurisdiction over Plaintiff's challenge to the propriety of ED's decision to cancel this procurement and that its supplemental complaint is not moot.  Therefore, Defendant's Motion to Dismiss should be denied.

Dated: May 18, 2018                              Respectfully submitted,

                                                 /s/ William M. Jack
                                                 William M. Jack
                                                 KELLEY DRYE & WARREN LLP
                                                 Washington Harbour, Suite 400
                                                 3050 K Street, NW
                                                 Washington, DC  20007-5108
                                                 (202) 342-8521
                                                 wjack@kelleydrye.com

                                                 *Attorney for Plaintiff GC Services Limited Partnership*

Of Counsel:

William C. MacLeod
David E. Frulla
Amba M. Datta
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC  20007-5108
(202) 342-8400