**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| FMS INVESTMENT CORP., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 18-204C (consolidated) |
| | ) | |
| THE UNITED STATES, | ) | Judge Thomas C. Wheeler |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PERFORMANT RECOVERY, INC., AND WINDHAM PROFESSIONALS, INC. | ) ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| _____ | ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to this Court's May 11, 2018 order (Dkt. # 200), The CBE Group, Inc. (CBE), through undersigned counsel, files this opposition to Defendant's (ED) May 7, 2018 Motion to Dismiss under RCFC 12(b)(1). The motion is based on ED's irrational decision to cancel solicitation ED-FSA-16-R-0009 "this solicitation".

CBE concedes that Counts II through V of its Complaint are now moot based on ED's cancelation of this solicitation and termination of the previously awarded contracts. Count I of CBE's Complaint, however, is strengthened by these actions and should not be dismissed. In Count I, CBE showed that ED's decision to award only two contracts was arbitrary and without a rational basis when considered against the background facts of the procurement and the work demands facing the selected contractors. *See The CBE Gp., Inc. v.*

1

*United States*, Case No. 1:18-cv-00214-TCW, Dkt. # 1 at 11-14 (consolidated with *FMS Investment Corp., et al., v. United States*, Case No. 1:18-cv-00204-TCW). ED's decision to now cancel the solicitation strengthens the force of the allegations in Count I of CBE's Complaint because, if it was arbitrary and irrational to issue only two awards to service ED's expanding pool of defaulted accounts (it was), it is even less rational to make no awards at all.

During the nearly five years ED has been trying to procure follow-on PCA services, it has not claimed that the awards to be made under this solicitation (or its predecessor) were surplus to its needs. In fact, ED has been saying to this Court and the Federal Circuit for more than a year that the "dilution theory" espoused by Continental Services Group in its challenge to the December 2016 awards was flawed. Instead, ED has insisted that "student loan borrowers continue to default at alarming rates (over 100,000 defaults each month according to Education estimates and historical data), so the pool of collections work is *continuously expanding*." *Cont'l Serv. Grp. V. United States*, 2018 U.S. App. LEXIS 793 (Fed. Cir. Jan. 12, 2008)(emphasis added).

ED's assertions about a continuously expanding pool are backed up by data. When ED began its reprocurement effort in July 2013 the total inventory assigned to all 22 PCAs was $28.4 billion. *See* CBE Supp. Complaint, Reed Decl. at ¶ 2 (citing FSA data). The total assigned inventory as of ED's last published report, at the end of the first quarter of 2017, was $97.9 billion. *See* https://studentaid.ed.gov/sa/about/data-center/student/default. According to Acting Under Secretary of ED James Manning's June 2017 Declaration, "Based on fiscal year 2016 figures, a conservative estimate of newly defaulted accounts added to the Department's inventory *every month* would be 118,000 borrowers, with the

value of those loans totaling $2.285 billion." *Cont'l Servs. Grp. et al. v. United States*, 17-449, Dkt #157, at 5, ¶13 (emphasis in original).[1] As 13 months have passed since ED's last published report, that would put ED's defaulted loan portfolio conservatively at around $100 billion ($125 billion less collections and offsets during that same period.)  Four years ago ED had 17 large and 5 small PCAs servicing a $28.3 billion portfolio. Today it has a $100 billion portfolio serviced by 11 small businesses (the most productive of which will lose their contracts in mid-2019)[2], plus two new ATEs and five other ATEs handling a large number of accounts in-repayment.

Only six months ago the Agency succeeded in convincing the Federal Circuit that there could be no dilution of an ever-expanding defaulted loan pool.  Yet it now contends that, based upon a "substantial change in the requirements to perform collection and administrative resolution activities on defaulted Federal student loan debts," ED no longer has a need for this Solicitation.  *See FMS Investment Corp. et al. v. United States*, 18-204, Dkt #188.  Specifically, ED claims:

> *In the future*, ED *plans to* significantly enhance its engagement at the 90-day delinquency mark in *an effort to* help borrowers more effectively manage their Federal student loan debt. *ED expects* these enhanced outreach efforts to *reduce the volume* of borrowers that default, improve customer service to delinquent borrowers, and *lower* overall delinquency levels.  The current [PCAs] under contract with ED have sufficient capacity to absorb the number of accounts *expected to need debt collection services* while the process for transitioning to the new approach

---

[1] In his sworn statement Mr. Manning represented to this Court that the Department of Education, borrowers and the public fisc were all being harmed by this Court's injunction which, among other things, interfered with ED's statutory obligation to collect defaulted student loans and assist borrowers in repaying and rehabilitating their loans.

[2] Based on figures in Mr. Manning's Declaration, at least three and likely more small businesses will exceed the applicable size standard, which will prevent ED from exercising options when their initial period of performance ends next year.  *See Cont'l Servs. Grp. et al. v. United States*, 17-449, Dkt #157-1, at 7.

3

>*is developed* and implemented.  Therefore, additional PCA contract work is not currently needed.

*Id*. (Emphasis on conditional language added).

The Agency announced its cancellation decision at 4:06 pm on May 3.  At about 2:45 pm the day before, in his parting words urging this Court to dismiss CBE's separate Complaint against two ATE awards, Government's counsel confirmed "As the Court said, [CBE does] have a substantial chance to receive an award" under this solicitation. *The CBE Group, Inc. v. United States*, 17-1970, Dkt# 29, Tr. at 40:18-19.  ED's abrupt about-face twenty-five-and-a-half hours later suggests there is little analysis underlying ED's conditional and aspirational plan to significantly reduce student loan defaults through enhanced engagement.

Other than the short-on-details May 3 notice, all evidence indicates that ED's pipeline of defaulted student loans is, in fact, continuously expanding, and ED knows it will need PCAs to do the work.  During its nearly five-year quest to complete this procurement, ED never mentioned any plan to enhance engagement, but rather tried every possible option to get PCAs under contract.  Earlier this year ED announced on its website a plan to conduct a follow-on small business procurement for PCA services by June of this year. *See Forecast of Prime Contracting Opportunities for FY 2018* available at https://www2.ed.gov/fund/contract/find/forecast.html (click hyperlink MS Excel (94 KB) – FY 2018 Forecast of Contract Opportunities).  The month before that, ED directed over 325,000 defaulted loan accounts to two ATEs, Pioneer and Alltran, just two years after recalling their accounts due to compliance problems. *Continental Serv. Gp., Inc. v. United*

*States*, 1:17-cv-00449-TCW at Dkt. #213-2.  Each of these actions reflected ED's urgency to address its expanding pool of defaulted loans and growing need for PCA services.

It is well established that offerors may protest the cancelation of a solicitation. *See, e.g., Starry Assocs., Inc. v. United States*, 127 Fed. Cl. 539, 549-550 (Fed. Cl. 2016)(decision to cancel solicitation in favor of using existing contractual mechanisms to perform work irrational); *MORI Assocs. v. United States*, 102 Fed. Cl. 503, 543-551 (Fed. Cl. 2011)(enjoining cancelation of solicitation where cancelation lacked a rational basis).  CBE's challenge to the number of awards remains valid, and is indeed strengthened by ED's decision to cancel the solicitation, which is every bit as irrational as the decision to cancel the procurements in *Starry* and *MORI*.

CBE has already filed a motion for leave to supplement its Complaint to challenge ED's decision to cancel the procurement.  *See* Dkt# 233.  ED's decision to cancel the procurement has not fully mooted CBE's Complaint, because it has actually exacerbated the problem challenged in Count I.  Even if the Court disagrees on that point, the law is well established that a Plaintiff should be permitted to supplement its Complaint to cure any jurisdictional defect arising from agency action rather than have its case dismissed.  *See Coastal Envt'l Gp., Inc. v. United States*, 114 Fed. Cl. 124, 132 (Fed. Cl. 2013) (citing *Matthews v. Diaz*, 426 U.S. 67, 75 (1976) and *Black v. Sec'y of HHS*, 93 F.3d 781, 790 (Fed. Cir. 1996)).  Because CBE is seeking leave to supplement its Complaint, there is "nothing [to] be gained save the court's collection of a new filing fee" by dismissing the case and forcing CBE to refile.  Just as in *Coastal*, the current case should proceed with CBE and others granted leave to supplement their Complaints.  *Coastal*, 114 Fed. Cl. at 135.

Dated:  May 18, 2018                              Respectfully submitted,

By:  //s// Jeffery M. Chiow
Jeffery M. Chiow (Counsel of Record)

Neil H. O'Donnell
Lucas T. Hanback
Stephen L. Bacon

ROGERS JOSEPH O'DONNELL
875 15th Street NW, Suite 725
Washington, DC 20005
Tel:  (202) 777-8952
Fax:  (202) 347-8429
Email:  jchiow@rjo.com

*Attorneys for Plaintiff, The CBE Group, Inc.*

456933.2