## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| **FMS INVESTMENT CORP.,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | **Case No. 18-204C (consolidated)** |
| **Defendant,** | |
| **and** | |
| **PERFORMANT RECOVERY, INC.,** *et al.,* | **Judge Thomas C. Wheeler** |
| **Defendant-Intervenors.** | |

## PLAINTIFF CENTRAL CREDIT SERVICES, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Central Credit Services, LLC ("CCS") respectfully submits this response in opposition to Defendant's Motion to Dismiss this consolidated protest related to Department of Education ("ED") Solicitation No. ED-FSA-16-R-0009 ("Solicitation"). ECF 189. Defendant's Motion to Dismiss inaccurately contends that the Government's decision to cancel the Solicitation renders this protest moot. The Government notified the parties and the Court of its decision to cancel the Solicitation by way of Notice on May 3, 2018. ECF 188. In relevant part, the Notice provides:

> The solicitation will be cancelled due to *a substantial change* in the requirements to perform collection and administrative resolution activities on defaulted Federal student loans debts. In the future, ED plans to significantly enhance its engagement at the *90-day delinquency mark* in an effort to help borrowers more effectively manage their Federal student loan debt. ED expects these enhanced outreach efforts to reduce the volume of borrowers that default, improve customer service to delinquent borrowers, and lower overall delinquency levels. The current private

> collection agencies (PCA) under contract with ED have **sufficient
> capacity to absorb** the number of accounts expected to need debt
> collection services while the process for transitioning to the new
> approach is developed and implemented.   Therefore, additional
> PCA contract work is not currently needed.

*Id.* (emphasis added).   As is clear from the language of the Notice, however, this vague and incomplete explanation of why the Government decided to cancel the Solicitation is entirely deficient and in and of itself cannot provide a reasonable, rational basis for the cancellation. Among other things, the Notice fails to provide a sufficient explanation as to what "substantial change" occurred that precipitated its decision to cancel the Solicitation, it fails to describe how "90-day delinquent" calls will decrease the amount of debt collection services required to the extent that it renders additional PCAs unnecessary, and it completely omits any clarification as to how it plans to allocate debt collection services work to PCAs currently under contract.   All of which culminate in a cancellation decision that is irrational, arbitrary and capricious.

*First*, the Government's discussion of a "*substantial change* to the requirements to perform collection and administrative resolution activities on defaulted Federal student loans debts" as a basis for cancellation is insufficient to because it fails to provide any rational basis for the cancellation.   There has been no evidence presented in this litigation that would even suggest, much less establish, that such requirements have actually changed.   On the contrary, ED is still directed by Congress under the Debt Collection Improvement Act of 1996 (as amended) and Office of Management and Budget ("OMB") Circular A-129 to collect on defaulted student loan debt, and it is a public and verifiable fact that the instances of loan  defaults **continue  to rise**.   In 2017 alone, more than 17 million borrowers had federal student loans, with the amount in default reaching approximately $310 Billion.   And, as the Federal Circuit recently observed in a related case, over 100,000 borrowers continue to default each month.   *See Continental Serv.*

*Grp., Inc. v. United States,* 2017-2155, *et seq.* (Jan. 12, 2018), at 17.  The Government's failure to provide a more detailed explanation of this purported "substantial change," when it clearly had the opportunity to do so, begs the question of whether there even is such a change.  CCS firmly believes there is none.

  ***Second***, the Government's reference to ED's new plan to "significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt[,] . . . reduce the volume of borrowers that default, improve customer service to delinquent borrowers, and lower overall delinquency levels" likewise does not provide a rational basis for its cancellation.  There is no evidence that this "enhanced" approach has even begun to come to fruition, nor that it would be effective.  The mere unsupported hope that such an effort would reduce the amount of debt collection services ***in the future*** cannot serve as a rational basis for canceling a Solicitation that pertains to the ***current need for debt collection services.***  Even if this plan was eventually successful, however, such future effort has no bearing on the ED's debt collection work ***now***, which, as previously noted, only continues to rise.

  ***Third***, the Government asserts that, instead of moving forward with the subject Solicitation, it will allocate debt collection services work among the 11 PCAs that are currently under contract because the Government claims they have "sufficient capacity to absorb the number of accounts expected to need debt collection services while the process for transition to this [90-day plan] is developed and implemented."  This contention is inaccurate and unsupported.  The only PCA awardees left standing at this point that would be permitted to absorb new collection accounts are a handful of small businesses from a 2014 procurement.  These PCAs alone certainly would not be able to handle the exorbitant amount of documented

debt collection services work that already exist and that will only continue to increase over time. The Government has failed to provide any rational basis explaining how the existing PCAs, if they are eligible to do so, could absorb and handle the enormous, increased debt collection workload.

Not only is the Government's cancellation decision void of any rational basis, CCS believes the cancellation may be nothing more than a mere pretext to avoid competition in the face of multiple protests. This Court has held that such a pre-textual basis for cancellation is irrational on multiple occasions. *See, e.g., Starry Assocs., Inc. v. United States*, 127 Fed. Cl. 539, 549 (2016); *see also Overstreet Elec. Co., v. United States*, 47 Fed. Cl. 728, 732 (2000) ("[A]n award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation."). The Court should not permit ED to use cancellation as a means to avoid this litigation.

In light of the Government's failure to provide any rational basis for its cancellation decision, a permanent injunction rescinding the Government's arbitrary and capricious cancellation is necessary. Where, as here, there is no evidence that the agency undertook any meaningful review of its needs before cancelling the Solicitation, the Court has held the cancellation decisions to be arbitrary and capricious. *See Starry Assocs., Inc.,* 127 Fed. Cl. at 549 ("Although we view independently the bona fides of the cancellation decision, we note that it punctuates a series of actions which reflect a lack of fidelity to the procurement process."); *WHR Group, Inc. v. United States,* No. 13-515C, 2014 WL 1377819 (Fed. Cl. March 21, 2014) (FBI's corrective action failed to state a rational basis for its decision to cancel the procurement, finding that some of the FBI's asserted bases were no more than "bald assertions."); *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503 (2011) (cancellation of

procurement lacked a rational basis and a permanent injunction rescinding the cancellation was warranted); *see also Sys. Application & Technologies, Inc. v. United States*, 100 Fed. Cl. 697, 722 (2011), *aff'd*, 691 Fed. Cir. (2012) ("Under this standard the court may set aside a procurement action if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.") (citations omitted).

Finally, the Government's cancellation decision does not render CCS's protest moot. CCS has suffered, and will continue to suffer, economic injury due to the many errors ED made throughout this procurement, including its cancellation decision.   The ED exacerbated its procurement errors by its unreasonable cancellation decision.   *See Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 680 (2009) (noting "cancellation of the solicitation does not . . . render plaintiff's entire case a nullity. The cancellation has not eradicated, but perpetuates plaintiff's injury.")   CCS continues to suffer harm as a result of ED's irrational cancellation because it has been denied the opportunity to compete for new accounts as a result of the unreasonable, irrational and arbitrary and capricious cancellation by ED.

 Accordingly, CCS respectfully notifies the Court that, as other protestors to this litigation already have done (*e.g.,* ECF 214, ECF 215, ECF 221, ECF 223, ECF 227, ECF 228, EFC 230, ECF 233, ECF 235), CCS intends to file a Motion under RCFC 15(d) for leave to supplement its original complaint in this action in order to add a claim specifically challenging the Government's cancellation, in addition to a proposed supplemental complaint.   This Court previously has held that it retains jurisdiction over a plaintiff's action following a cancellation decision where the plaintiff moves to file an amended or supplemental complaint. *See Coastal Envtl. Grp. v. United States*, 114 Fed. Cl. 124, 132 (2013) (holding "it appears that plaintiff is not legally barred from curing, with a supplemental complaint, the jurisdictional defect arising

from the cancellation of the procurement that was the subject of its protest"); *Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673 (2009) (allowing plaintiff to supplement its complaint and stating "because plaintiff has challenged the lawfulness of the cancellation decision, live controversy persists.")[1].

For the foregoing reasons, CCS respectfully requests that the Court: (1) deny Defendant's Motion to Dismiss, (2) enjoin the Government's arbitrary and capricious cancellation decision, and (3) order that ED supplement the current Administrative Record with documents pertaining to the reasonableness of the cancellation decision.

Dated: May 18, 2018                          Respectfully submitted,

                                             **REED SMITH LLP**
                                             /s/ Lawrence S. Sher
                                             Lawrence S. Sher (counsel of record)
                                             Lawrence P. Block
                                             Elizabeth Leavy
                                             1301 K Street, N.W.
                                             Suite 1000 – East Tower
                                             Washington, DC 20005-3373
                                             Tel: (202) 414-9210
                                             Fax: (202) 414-9299
                                             lblock@reedsmith.com
                                             lsher@reedsmith.com
                                             Eleavy@reedsmith.com
                                             *Counsel for Central Credit Services, LLC*

---

[1]  An action challenging an agency's cancellation determination falls under the Court's bid protest jurisdiction. *See Madison Servs., Inc.*, 90 Fed. Cl. at 680 (explaining "the cancellation of a solicitation is subject to the court's review, pursuant to 28 U.S.C. § 1491(b)"); *Starry Assocs.*, 127 Fed. Cl. at 548–50 (reviewing challenge to cancellation under 28 U.S.C. § 1491(b)(1)(4)); *Coastal Envtl. Grp.*, 114 Fed. Cl. at 132–33 (noting "there is precedent in support of the court's ability to entertain protests challenging an agency's decision to cancel a procurement"); *MORI Assocs.*, 102 Fed. Cl. at 522 (explaining "MORI's protest of the cancellation decision comes within our jurisdiction").

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 18, 2018, I caused a copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically provide email notification of the following to all attorneys of record.


<u>/s/ Lawrence S. Sher</u>
Lawrence S. Sher