**REDACTED VERSION**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |  |
|---|---|---|
| FMS INVESTMENT CORP., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action Nos. 18-204C, *et al.* |
| THE UNITED STATES, | ) | Judge Thomas C. Wheeler |
| | ) | |
| Defendant, | ) | |
| and | ) | |
| | ) | |
| PERFORMANT RECOVERY, INC., *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
|  | ) | |

### DEFENDANT-INTERVENOR PERFORMANT RECOVERY, INC'S REPLY TO PLAINTIFFS' RESPONSES TO PERFORMANT'S MOTION FOR <u>PARTIAL SUMMARY DISMISSAL</u>

Dated: April 26, 2018

Respectfully submitted,

*Of Counsel*:

Thomas L. McGovern III
Christine Reynolds
Thomas A. Pettit
HOGAN LOVELLS US LLP

/s/ Michael McGill
Michael McGill
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-8862
Facsimile: (202) 637-5910
michael.mcgill@hoganlovells.com

*Counsel of Record for*
*Performant Recovery, Inc.*

# TABLE OF CONTENTS

A.      The plaintiffs are alleging that the Department of Education's award to
        Performant Recovery was tainted by agency bias and conflicts of interest
        associated with Secretary DeVos's prior indirect investment in Performant……..2

B.      None of the plaintiffs have justified their failure to timely raise their supposed
        concerns related to Secretary DeVos prior to award……………..………………….7

C.      The plaintiffs have not pointed to any evidence that Secretary DeVos did not
        divest as required by her ethics agreement, and they have failed to meaningfully
        respond to the publicly available information demonstrating that the Secretary
        could not have held any interest in any Performant company after August
        2017……………………………………………………………………………..12

D.      FMS and ConServe have failed to state a claim that Performant Recovery suffered
        from an organizational conflict of interest that it was required to disclose in its
        proposal………………………………………………………………………..15

E.      The plaintiffs' allegations related to Secretary DeVos are ripe for dismissal…...18

# TABLE OF AUTHORITIES

CASES

*Blue & Gold Fleet L.P. v. United States*,
   492 F.3d 1308 (Fed. Cir. 2007) ............................................................... 8, 9

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998) ................................................................. 18

*Concourse Grp., LLC v. United States*,
   131 Fed. Cl. 26 (2017) ...................................................................... 8, 9, 11

*CRAssociates, Inc. v. United States*,
   102 Fed. Cl. 698 (2011) ............................................................................ 9

*Ernst & Young, LLP v. United States*,
   No. 17-1329, 2018 WL 1151011 (Fed. Cl. Mar. 5, 2018) ......................... 9

*Hoffman v. United States*,
   894 F.2d 380 (Fed. Cir. 1990) ................................................................... 6

*Infrastructure Def. Techs., LLC v. United States*,
   81 Fed. Cl. 375 (2008) ............................................................................. 8

*Ingham Reg'l Med. Ctr. v. United States*,
   126 Fed. Cl. 1 (2016) ............................................................................... 18

*Schism v. United States*,
   316 F.3d 1259 (Fed. Cir. 2002) ................................................................. 6

*Starr Int'l Co. v. United States*,
   No. 11-779C, 2013 WL 5976244 (Fed. Cl. Nov. 8, 2013) ........................ 3

*T&M Distribs., Inc. v. United States*,
   185 F.3d 1279 (Fed. Cir. 1999) ............................................................... 20

RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

Rule 12(b)(6) ....................................................................................................... 2

Rule 12(f) ............................................................................................................ 3

REGULATIONS

5 C.F.R. § 2634.1003 ......................................................................................... 13

5 C.F.R. § 2634.1004(a) ..................................................................................... 13

5 C.F.R. § 2634.1006(c) ..................................................................................... 13

EDAR 3452.209-71 ..................................................................................... 16, 17

FAR 9.505-1 ...................................................................................................... 16

FAR 9.505-2 ...................................................................................................... 16

FAR 9.505-3 ........................................................................................................................ 16

FAR 9.505-4 ........................................................................................................................ 16

**DECISIONS OF THE GOVERNMENT ACCOUNTABILITY OFFICE**

*CapRock Gov't Sols., Inc.*,
    B-402490 *et al.*, 2010 CPD ¶ 124 ............................................................................ 16

*Satellite Tracking of People, LLC*,
    B-411845 *et al.*, 2015 CPD ¶ 347 ............................................................................ 16

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| FMS INVESTMENT CORP., *et al.*,      ) | |
|      ) | |
|      Plaintiffs,      ) | |
|      ) | |
| v.      ) | Civil Action Nos. 18-204C, *et al.* |
|      ) | Judge Thomas C. Wheeler |
| THE UNITED STATES,      ) | |
|      ) | |
|      Defendant,      ) | ███████████████ |
| and      ) | |
|      ) | |
| PERFORMANT RECOVERY, INC., *et al.*,      ) | |
|      ) | |
|      Defendant-Intervenors.      ) | |

**DEFENDANT-INTERVENOR PERFORMANT RECOVERY, INC'S
REPLY TO PLAINTIFFS' RESPONSES TO PERFORMANT'S MOTION FOR
PARTIAL SUMMARY DISMISSAL**

Defendant-Intervenor Performant Recovery, Inc. 1/ ("Performant Recovery") submits this reply to the briefs filed by plaintiffs Account Control Technology, Inc. ("ACT"), Collecto, Inc. d/b/a EOS CCA ("Collecto"), Continental Service Group, Inc. ("ConServe"), FMS Investment Corp. ("FMS"), and Progressive Financial Services, Inc. ("Progressive") in response to Performant Recovery's March 15, 2018 Motion for Partial Summary Dismissal (the "Motion"). The Motion asks the Court to dispose of all of the plaintiffs' claims that are based on an indirect debt investment that Department of Education (the "Department") Secretary Betsy DeVos previously held in one of Performant Recovery's affiliates. The Motion explained that these

---

1/      Throughout this brief, references to "Performant" refer to the Performant corporate family generally. Specific members of that corporate family are identified by name as appropriate.

1

allegations are patently untimely, speculative, and refuted by publicly available information showing that any interest the Secretary previously held in Performant was extinguished long before the agency selected Performant Recovery's proposal for award. As explained below, the plaintiffs' responses utterly fail to explain why the plaintiffs did not timely voice their supposed concerns with the Department of Education, fail to provide any factual allegations to support their speculative claims of bias and bad faith, and fail to address the dispositive fact that Secretary DeVos could not have benefited in any way from an award to Performant Recovery. Nothing in the plaintiffs' responses is sufficient to save their defective claims from dismissal pursuant to Rule 12(b)(6) of the Rules of this Court and applicable precedent. 2/

### A. The plaintiffs are alleging that the Department of Education's award to Performant Recovery was tainted by agency bias and conflicts of interest associated with Secretary DeVos's prior indirect investment in Performant.

As Performant Recovery noted in its Motion, just seven of the 20 plaintiffs 3/ involved in this litigation leveled allegations based on the indirect financial interest that the Secretary formerly held in a Performant Recovery affiliate. 4/ Of those seven plaintiffs, two declined to respond to Performant's Motion, presumably conceding that their unfounded allegations should

---

2/      Performant Recovery is not currently asking this Court to dismiss those aspects of the plaintiffs' complaints that are unrelated to Secretary DeVos and her former financial interest in Performant Recovery's affiliate. Insofar as certain plaintiffs rely on multiple allegations— including those related to Secretary DeVos—to support a single count in their complaints, or otherwise include allegations relevant to Secretary DeVos, Performant Recovery contends that the particular allegations related to Secretary DeVos should be dismissed or, alternatively, stricken.

3/      At the time Performant Recovery filed its Motion, there were 19 plaintiffs. Alltran subsequently filed its complaint, bringing the total to 20. *See* ECF No. 173.

4/      As Performant Recovery explained in its Motion, the Secretary invested in a single fund that held debt (as opposed to equity) in the Performant Financial Corporation family. The Secretary's indirect interest in that fund, MCF CLO IV, LLC, was made through RDV Corporation and Family Trust 8 and obtained through Madison Capital. *See generally* Motion at 7-8.

be dismissed. 5/  A third plaintiff, Collecto, filed a perfunctory two-page response, asserting only

that "[t]here is no count resting on those reports, and no 'claim' for the Court to dismiss." 6/  The

remaining four plaintiffs that raised these claims—ACT, ConServe, FMS, and Progressive—

filed responses opposing dismissal, but they failed to justify their allegations or explain why they

should survive any further. 7/

Predictably, all four of these plaintiffs insist that they are not alleging bias or bad faith. 8/

It is not surprising that the plaintiffs are straining to characterize their claims as something else,

as they are doubtless aware of the higher bar that attaches to allegations of bias and bad faith.

But as the following illustrative quotes from their own filings (including their response briefs)

demonstrate, the plaintiffs plainly are alleging that the Secretary herself acted unethically in

whatever role she might have played in overseeing this procurement, and/or that other

---

5/      Value Recovery Holding, LLC and Gatestone & Co. International, Inc. did not file
responses to Performant's Motion.

6/      ECF No. 179, Collecto Response Br., at 2.

7/      Progressive and Collecto contend that Performant Recovery should have filed a motion to
strike the allegations related to Secretary DeVos pursuant to Rule 12(f).  Rule 12(f) provides that
a motion to strike is proper to remove "from a pleading an insufficient defense or any redundant,
immaterial, impertinent, or scandalous matter."  *Starr Int'l Co. v.  United States*, No. 11-779C,
2013 WL 5976244 at * 1 (Fed. Cl. Nov. 8, 2013) (Wheeler, J.).  Performant Recovery is asking
the Court to dismiss any counts, allegations, and claims that are based, implicitly or explicitly, on
Secretary DeVos's former interest in Performant Recovery.  Performant Recovery believes that
this is most appropriately accomplished through a motion to dismiss.  If the Court disagrees,
however, it should strike the plaintiffs' allegations rather than dismissing them.

8/      ECF No. 180, FMS Response Br., at 10; ECF No. 181, ACT Response Br., at 1; ECF No.
182, Progressive Response Br., at 7; ECF No. 183, ConServe Response Br., at 2.  Collecto goes
so far as to say it is "simply mention[ing] public reports" and not claiming anything at all with
respect to the Secretary's former interest in a Performant Recovery affiliate.  Collecto Response
Br. at 2.  Collecto's attempt to downplay its protest allegation is disingenuous.  In its Motion to
Supplement the Administrative Record, Collecto flatly admitted that it had raised a conflict of
interest allegation relevant to Secretary DeVos's alleged ties to Performant.  *See* ECF No. 135 at
2 (seeking production of "[d]ocumentation of the consideration of a ***potential conflict of interest***
with respect to Secretary DeVos or her family members, ***mentioned in the Complaint filed by
[Collecto]***") (emphasis added).

Department officials, motivated solely by the Secretary's former indirect debt investment in a

Performant company, improperly steered an award to Performant Recovery:

- "ACT does not allege bias, bad faith, or a conflict of interest . . . . ACT's Complaint offers . . . . facts to show that [the Department's] evaluators, among other things, *improperly and irrationally were influenced by the relationship between Performant and Ms. DeVos in their evaluation of Performant*." 9/

- "ACT alleges Performant . . . *was favored based on its connection to Secretary DeVos* . . . . ACT's Complaint includes ample facts . . . demonstrating blatant unequal treatment and disregard for the stated criteria, to include *improper elevation of Performant due to its ties to Secretary DeVos*." 10/

- "Performant, which was not one of the awardees after the first source selection, has been widely reported as a company in which the Secretary of Education, Betsy DeVos, had invested. She presumably had divested this investment when taking office, but *other members of her family may, however, still be investors in Performant*." 11/

- "Even in those instances where one can trace the divestiture of some portion of the Secretary's interest in an asset, is it is not possible for ConServe to determine to whom the asset was sold or transferred and, thus, ConServe remains concerned that

---

9/     ACT Response Br. at 1 (emphasis added). In its response, ACT contends that the Department of Education evaluated Performant Recovery's proposal more favorably than it deserved, repeatedly characterizing Performant Recovery's past performance as less than stellar. *See generally* ACT Response Br. ACT's claims related to the specifics of the agency's evaluation of Performant Recovery's proposal are of little, if any, relevance to the pending Motion. Again, Performant Recovery is seeking dismissal at this time of only those counts, allegations, and claims related to Secretary DeVos. If and when those frivolous elements are disposed of, ACT and the other plaintiffs will remain free to litigate their challenges to the reasonableness of the agency's evaluations and award decisions. It bears noting, however, that ACT has blatantly mischaracterized Performant Recovery's impressive performance history. Performant Recovery is "the only vendor to have been on all consecutive contracts with [the Department] since we started working with [the Department] in 1990." AR Tab 64 at 4405. Demonstrating the Department's confidence in Performant Recovery's performance, the agency assigned some $11.3 billion dollars in borrower accounts to Performant Recovery from 2010 to 2015. *Id.* at 4406. ACT conveniently ignores the three highly relevant past performance references that Performant Recovery highlighted in its proposal, all of which offered high praise for Performant Recovery's work, citing its consistent status as a "top performer" and a "great partner," its innovative efforts to improve performance, and its excellent "attention to compliance," among other attributes. *See generally* AR Tab 72 at 5626-5630.

10/     ACT Response Br. at 7, 10 (emphasis added) (citing ACT Compl. ¶ 150).

11/     Collecto Compl. ¶ 16.

4

Ms. DeVos *may have transferred the assets to a family member*, or family-owned or family-controlled entity." 12/

- "Secretary DeVos had a financial interest in one of the competitors for this contract. Given that [the Department] evaluated and awarded these contracts, *that fact certainly creates the appearance of impropriety* and a potential conflict of interest." 13/

- "Progressive[] . . . points to Performant's *former* connection to the Secretary as either a possible reason for [the Department's] use of unstated evaluation criteria . . . or a reason why [the Department] *deviated from the evaluation criteria and substantially relaxed its evaluation for Performant*." 14/

- "[I]n the original evaluation, Performant was rated ███████████ [under the Past Performance factor] . . . . There could be no additional information that Performant could have provided since the initial submission that could have increased its Past Performance score ███████████ unless [the Department] *deviated from the evaluation criteria and substantially relaxed its evaluation scheme for Performant so that it could make an award to a company which was a previous investment vehicle for the current Education Secretary, Betsy DeVos*." 15/

- The Motion to Supplement the Administrative Record filed jointly by ACT, ConServe, FMS, and GC Services Limited Partnership discusses at length the perceived need to supplement the record to, among other things, address "optics concerns" regarding the Secretary's former connection to a Performant entity. 16/ That motion includes a note and parenthetical referencing allegations of bad faith and bias. 17/

---

12/     ConServe Compl. ¶ 95 (emphasis added).

13/     FMS Response Br. at 11 (emphasis added).

14/     Progressive Response Br. at 10 (emphasis added).

15/     Progressive Compl. ¶ 61 (emphasis added).  In its response to Performant's Motion, Progressive repeatedly attempts to downplay the seriousness of this allegation, referring to it as a "lone sentence," Progressive Response Br. at 1; a "simpl[e] mention" of the Secretary's former investment, *id.* at 5; a "minor allegation," *id.* at 7; and a "passing" reference, *id.* at 11, among other things.  Progressive cannot seriously deny the fact that its complaint unequivocally suggested that the Department "deviated from the evaluation criteria and substantially relaxed its evaluation scheme" for the *express purpose* of awarding a contract to "a company which was a previous investment vehicle for [the Secretary]."  Progressive Compl. ¶ 61.  Far from a minor allegation, this is a serious allegation of government bias and/or bad faith.

16/     ECF No. 133 at 9-11.

17/     *Id.* at 11 ("Documents relating to the Agency's knowledge or consideration of these issues are necessary for effective judicial review to determine if the procurement has been tainted.  *See L-3 Communications*, *supra*, 98 Fed. Cl. at 49 (holding the AR 'does not contain sufficient information to permit effective judicial review of L-3's *allegations of bad faith and*

Contrary to Progressive's suggestion, Performant Recovery has not "fabricate[d]" nonexistent bias or bad faith allegations. 18/  The plaintiffs' own statements show that they have expressly raised such allegations themselves.  The plaintiffs have accused Secretary DeVos and the agency officials involved in this procurement of unethical conduct without any evidence or hard facts to actually support such serious accusations—much less the "well-nigh irrefragable proof" of improper agency conduct that is required to overcome the long-standing legal principle that government officials are presumed to act in good faith. 19/

Despite the plaintiffs' attempts to distance themselves from their own allegations, there is no way to interpret their speculative theories as anything other than claims of bad faith or bias. 20/  What, if not a bias allegation, is the plaintiffs' assertion that agency evaluators unreasonably favored Performant Recovery due to the Secretary's former investment in one of

---

*bias* because it does not contain the full picture of the Government's own assessment of this procurement')." (emphasis added).

18/      Progressive Response Br. at 3.  Progressive claims that Performant Recovery filed its Motion to "harass and intimidate Progressive." *Id*. at 11.  That is not a fair accusation.  We respectfully submit that the Motion speaks for itself, demonstrating that there are several strong bases on which this Court should dismiss the plaintiffs' claims related to Secretary DeVos. Progressive's inability to defend its allegations belies its suggestion that Performant's position is unfounded.  Nor is it fair for Progressive to suggest that the Motion is a "waste of judicial resources." *Id*.  Performant Recovery did not dream up these allegations that turn on the entirely unsupported speculation that the Secretary of Education may have engaged in highly unethical (and possibly criminal) conduct.  Progressive and the other plaintiffs did so, and insofar as litigating these allegations wastes judicial resources, the responsibility rests with the plaintiffs, which could have preserved not only resources but also their own credibility by withdrawing these allegations when it was brought to their attention that Secretary DeVos could not possibly have held an interest in Performant upon award.

19/      *Schism v. United States*, 316 F.3d 1259, 1302 (Fed. Cir. 2002); *see also Hoffman v. United States*, 894 F.2d 380, 385 (Fed. Cir. 1990) (observing that "conjectural assumptions regarding the factors that could have motivated [a government official]" to take a specific action "do not rebut th[e] presumption [of regularity]").

20/      Progressive suggests it is "telling[]" that the Government did not "endorse[] or join[]" Performant's Motion.  Progressive Response Br. at 3 n.1.  Progressive ignores the fact that the Government's March 16, 2018 Response to Plaintiffs' Motion to Supplement the Administrative Record adopted some of the same arguments raised in Performant's Motion.  *See generally* ECF No. 144 at 9-11.

6

that company's affiliates?  How is the plaintiffs' suggestion that the Secretary may have transferred her investment to an unidentified family member to maintain her interest in a Performant entity—thereby circumventing her ethical obligations to serve her own financial interests—anything but a (fully unsupported) claim of bad faith and highly unethical conduct?  The Court should reject the plaintiffs' self-serving attempts to characterize their arguments as anything other than allegations of bias or bad faith.

### B.     None of the plaintiffs have justified their failure to timely raise their supposed concerns related to Secretary DeVos prior to award.

As Performant Recovery explained in detail in its Motion, each of these plaintiffs knew, or should have known, the facts that form the bases of their allegations long ago.  All of these allegations are predicated on Secretary DeVos's prior indirect investment in Performant, which was revealed through the Secretary's public disclosures in connection with her Office of Government Ethics ("OGE") vetting and Senate confirmation process and widely reported in the *Washington Post*.  There is no dispute—or certainly no reasonable dispute—that the plaintiffs knew about this investment based on publicly available information prior to the submission of revised proposals on June 20, 2017.  Indeed, ACT describes Secretary DeVos's financial interest as "***well-publicized***" based on information that was available ***no later than January 2017***. 21/ And FMS acknowledges "[t]he media first began publishing articles about Secretary DeVos's financial interest in Performant ***beginning in January 2017***." 22/  Yet not a single plaintiff voiced its supposed concern with the Department in any way or filed a pre-award protest asserting that the Secretary's financial interests could in some manner impact the agency's

---

21/     ACT Response Br. at 1 (emphasis added).
22/     FMS Response Br. at 6 (emphasis added).  FMS also "concedes that Performant's debt refinancing was disclosed to investors in SEC filings in August and November 2017." *Id*. at 8.

7

evaluation and award decisions. Instead, each plaintiff chose to remain silent until *after* the agency announced its award decisions.

As Performant Recovery explained in its Motion, this Court's precedent makes clear that by failing to timely raise their concerns, the plaintiffs waived their right to complain following award. The Federal Circuit held in *Blue & Gold Fleet* that a protester that "has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 23/ This Court explained in *Concourse Group, LLC v. United States* that this waiver rule "applies broadly in bid protests to *all situations* where the protesting party had the opportunity to raise its claim before the award of the contract." 24/ Under both *Blue & Gold Fleet* and *Concourse*, dismissal is appropriate where, as here, the facts giving rise to a protest ground were "easily recognizable or obvious" prior to award, but the protester failed to take advantage of the opportunity to file a pre-award challenge. 25/ Because the application of this rule is so expansive, the plaintiffs' untimely claims are waived regardless of whether the Court views them as allegations of conflict of interest and/or bias or bad faith stemming from that conflict. 26/

Confronted with this unambiguous precedent supporting dismissal here, the plaintiffs are unable to offer any legitimate reason why this Court should not find they have waived their claims related to Secretary DeVos's prior indirect debt investment in Performant. The plaintiffs strain to try to distinguish *Concourse*. ConServe, for example, notes that the plaintiff in

---

23/     *Blue & Gold Fleet L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

24/     131 Fed. Cl. 26, 30 (2017) (Wheeler, J.) (emphasis added).

25/     *Id.* (quoting *Infrastructure Def. Techs., LLC v. United States*, 81 Fed. Cl. 375, 389 (2008)).

26/     *Id.* (applying *Blue & Gold Fleet*'s waiver rule to "all situations" in protests where the protesting party had the opportunity to raise its claim prior to award).

*Concourse* had filed pre-award protests raising various allegations but failed to include the alleged organizational conflict of interest ("OCI") issue among its protest grounds, observing that "Concourse waived the alleged OCI because it knew of it when it filed its pre-award protest but chose not to pursue it then." 27/ Although ConServe offers little explanation for its assertion that the cases are distinguishable, it appears to be suggesting that because ConServe did not file any pre-award protest, this Court's waiver rules are inapplicable to its belated OCI ground. Unfortunately for ConServe, that is not a reasonable interpretation of *Concourse* and it is not how this Court's timeliness rules work, as a protester is not relieved from its obligation to timely challenge a given issue simply because it did not file any pre-award protest. 28/

The plaintiffs' position on the timeliness issue also finds no support in the Court's decision in *Ernst & Young, LLP v. United States*, which ConServe, FMS, and Progressive all cite. 29/ In that case, the Court, referencing *CRAssociates* and *Concourse*, acknowledged that *Blue & Gold Fleet*'s waiver rule applies where protesters fail to raise OCI claims prior to the close of the bidding process. 30/ The Court found, however, that in that particular case, the prospective offerors did not have "any information from which they could assert OCI claims prior to submitting their proposals." 31/ Thus, "the bases for [the protester's] OCI claims were not 'patent … prior to the close of the bidding process.'" 32/ Here, in sharp contrast to the

---

27/     ConServe Response Br. at 6.

28/     ConServe does not even attempt to distinguish *CRAssociates*, stating only that the case "do[es] not support dismissal here." *Id*. at 6. But *CRAssociates* supports exactly that. There, the Court found the protester had waived its right to challenge an alleged OCI because it failed to do so prior to award, despite having all the information it needed to do so well in advance of the award. *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 712 (2011). ConServe did the same.

29/     No. 17-1329, 2018 WL 1151011 (Fed. Cl. Mar. 5, 2018).

30/     *Id*. at *25.

31/     *Id*.

32/     *Id*. (quoting *Blue & Gold Fleet*, 492 F.3d at 1313).

situation in *Ernst & Young*, each of the plaintiffs raising allegations about Secretary DeVos's former investment knew **all** of the relevant information that now forms the basis for their untimely claims, but they failed to raise them prior to award. This is exactly the type of waiver situation contemplated in *Blue & Gold Fleet*, *Concourse*, and *CRAssociates*, and the Court's holding in *Ernst & Young* is entirely consistent with those decisions.

FMS's separate, convoluted justification for its failure to file a pre-award protest is similarly untenable. FMS claims that as of the June 20, 2017 deadline for revised proposal submissions, the Secretary "publicly had pledged to divest her financial interest in Performant by May 9, 2017." 33/ FMS contends that it did not have a viable basis to complain prior to submitting its proposal because it assumed (as it should have) that Secretary DeVos divested her interest in Performant by May 9, prior to the start of the evaluation process. 34/ FMS insists that it was Performant Chief Executive Officer Lisa Im's January 2018 commentary in the media that led FMS to doubt whether Ms. DeVos had divested her interest as she committed to do. FMS claims that Ms. Im "publicly commented in the media that Secretary DeVos's financial interest was not extinguished until August 2017." 35/ Of course, Ms. Im made no such comment. Rather, she simply recounted to a reporter that the Secretary could not possibly have held any interest in Performant any later than August 11, 2017 in light of Performant's refinancing of its debt in the ordinary course of business. 36/ Performant has absolutely no reason to believe—just

---

33/     FMS Response Br. at 6-7. The correct date is May 8, which was 90 calendar days after the Secretary's confirmation.

34/     *Id.* at 7.

35/     *Id.* at 8.

36/     Specifically, Ms. Im stated that "'Performant completely refinanced its debt mid-summer 2017 in the ordinary course of business—as the debt term had come due . . . . Performant's new lender is a private client partner who has no relations to Ms. DeVos or anyone related to Ms. DeVos.'" Performant's Motion Ex. H, Daniel Seiden, *Bid Protest: DeVos Ties to Contractor Rebutted as New Protest is Pondered*. FMS reads into that statement a suggestion that Secretary

as the plaintiffs have no reason to allege—that Secretary DeVos did not divest her indirect debt

investment in Performant by the agreed-upon deadline of May 8, 2017.  FMS has not offered any

valid explanation for why it only became concerned about this purported issue after the award,

even though it possessed all of the relevant information before it submitted its revised

proposal. 37/

     In sum, because each plaintiff had the opportunity to raise their respective claims related

to Secretary DeVos's former indirect debt investment in a Performant Recovery affiliate before

the submission of revised proposals and well before the Department's January 2018 awards and

failed to do so, 38/ the protesters have waived their claims.  The Court therefore should dismiss

(or, alternatively, strike) them.

---

DeVos held an indirect interest in Performant until the refinancing.  Performant never stated that
Secretary DeVos did not divest her interest by May 8, 2017 *as she was required to do*.  Just like
the protesters, Performant has no evidence to suggest that the Secretary did not timely divest her
interest in the fund that formerly held debt in Performant and has no reason to believe that is the
case.

37/    FMS adds that "[a]s a company reasonably may be presumed to know who holds nearly
$147 million of its corporate debt, [Ms. Im's] post-award statements (and strategic omissions)
indicate that Secretary DeVos's financial interest was not extinguished until August 2017."  FMS
Response Br. at 8.  That is a highly misleading description of both the nature of the Secretary's
former investment and Performant's public statements.  As Performant Recovery explained in its
Motion, the Secretary did not herself "hold[] nearly $147 million" of a Performant entity's
corporate debt.  Rather, she was invested in a single fund that held debt (as opposed to equity) in
the Performant Financial Corporation family.  *See generally* Performant's Motion at 7-8.
Additionally, Ms. Im's post-award statements do not contain any "strategic omissions."  FMS
Response Br. at 8.  Ms. Im is not privy to the status of the Secretary's current investments and
therefore naturally did not, and could not, comment on them.  Nor can FMS, which is why it is
all the more egregious that it continues to suggest, without any evidence whatsoever, that the
Secretary violated her ethics obligations and failed to divest as she committed to do in
connection with her Office of Government Ethics review and Senate confirmation process.

38/    *Concourse*, 131 Fed. Cl. at 29.

**C.     The plaintiffs have not pointed to any evidence that Secretary DeVos did not divest as required by her ethics agreement, and they have failed to meaningfully respond to the publicly available information demonstrating that the Secretary could not have held any interest in any Performant company after August 2017.**

The plaintiffs' responses do not offer any evidence that the Secretary did not comply with her public commitment to divest her indirect debt investment in Performant by May 2017, and they do not meaningfully address the critical fact that in August 2017, Performant completely paid off the debt vehicle through which the Secretary previously held her indirect investment. As explained in the Motion, even assuming for the sake of argument that the Secretary did not comply with her ethics agreement, Performant's refinancing extinguished her indirect interest *months* before the Department made any final evaluation or award decisions. 39/  None of the plaintiffs explain why their allegations should survive notwithstanding this undisputed fact. Instead, the plaintiffs ignore the refinancing and try to focus on whether Secretary DeVos complied with her commitment to divest certain investments, including her indirect debt investment in Performant, by May 2017.  It is not clear what relevance that has in light of Performant's August 2017 refinancing, but in any event, the plaintiffs have shown nothing to justify the Court concluding that the Secretary may not have complied with the commitments she made to OGE in her ethics letter.

ACT and ConServe argue that this Court should infer that Secretary DeVos did not liquidate her financial interests in Performant based on their observation that OGE did not issue a Certificate of Divestiture to Secretary DeVos and that the Secretary did not file a Form 278-T disclosing the sale of certain assets her ethics agreement required her to divest.  Even setting

---

39/     The agency completed its Factor 1 and Factor 2 consensus evaluations by September 15, 2017, and the Factor 3 evaluations were completed by September 11, 2017.  The Department announced its award decisions on January 10, 2018.

aside that presumption for a moment, ACT and ConServe are asking this Court to make a leap that is simply not supported.  It is true that OGE *may* issue Certificates of Divestiture to a person who is required to sell certain property to satisfy ethical obligations or as part of his or her Senate confirmation, 40/ but eligible persons are not *required* to obtain a Certificate of Divestiture, although doing so may allow them to defer paying capital gains tax on any appreciation.  To qualify, (1) OGE must issue the Certificate of Divestiture *prior* to the sale of the property, and (2) the person must reinvest the proceeds in "permitted property" within 60 days of the sale. 41/ "Permitted property" is defined as "[a]n obligation of the United States" (*e.g.*, a Treasury bond) or "[a] diversified investment fund" (*e.g.*, a diversified mutual fund that does not concentrate its assets in a single industry) not otherwise prohibited by law. 42/

Secretary DeVos is not legally obligated to obtain a Certificate of Divestiture for each of the investments identified in her ethics agreement, and there are myriad benign reasons that could explain why she did not receive one for the prior investment that the plaintiffs are focused on.  For example, her investment in the relevant Madison Capital fund (which held interests in numerous companies, including an affiliate of Performant Recovery) may have depreciated, meaning there would be no capital gains tax to defer.  Or perhaps she liquidated those investments prior to requesting a Certificate of Divestiture.  She may have chosen not to reinvest the funds in "permitted property," which excludes numerous other ethical investments, such as purchasing stock in companies without any ties to education.  She also could have decided not to reinvest those funds and thus not to defer paying the capital gains tax.  The bottom line is that the absence of a Certificate of Divestiture does not evince—or even suggest—that the Secretary did

---

40/     5 C.F.R. § 2634.1004(a).

41/     *Id*. § 2634.1006(c).

42/     *Id*. § 2634.1003.

not comply with her ethical obligation to divest her indirect debt investment by May 8, 2017. Given the presumption of regularity afforded to the Secretary's actions, the Court should reject the protesters' unsupported suggestion that she simply ignored her obligation to divest that interest. 43/

Moreover, even assuming for the sake of argument that the Secretary did not divest her interest through Madison Capital by the May 8 deadline, the plaintiffs' allegations still should be dismissed because, as Performant Recovery explained in its Motion, Performant's August 2017 refinancing eliminated any remaining interest the Secretary could have held. Performant Financial Corporation's August 11, 2017 form 8-K and its November 13, 2017 form 10-Q were filed with the U.S. Securities and Exchange Commission as required and are publicly available online. Those documents described in depth Performant Financial Corporation's prior relationship with Madison Capital and the termination of that relationship due to the refinancing, explaining that "[o]n August 11, 2017 . . . [the proceeds of a new loan] were applied to repay all outstanding amounts owed under our prior credit agreement . . . with Madison Capital." 44/ Performant's Motion explained that this information—which has been readily available to each

---

43/ Equally unavailing are ACT's and ConServe's claims about Secretary DeVos not filing Form 278-Ts disclosing her divestments of numerous financial interests she was required to liquidate, including her indirect debt investment in Performant. Individuals filing Form 278-Ts are not required to report all sales of assets. For example, a filer need not report transactions that occurred prior to becoming a Government employee. *Pub. Fin. Disclosure Guide: OGE Form 278-T Reporting Instructions*, OGE, https://www.oge.gov/Web/278eGuide.nsf/Content/Definitions~OGE+Form+278-T+Reporting+Instructions (last visited Apr. 23, 2018). Secretary DeVos was not a Government employee prior to being confirmed by the Senate and sworn-in by the Vice President approximately three months after being nominated (and thus beginning the ethics process) and three weeks after signing her ethics agreement. Consequently, ACT's and ConServe's focus on the absence of a Certificate of Divestiture or Form 278-T for these investments is misplaced.
44/ Performant's Motion Ex. G, Performant Fin. Corp.'s Aug. 17, 2017 8-K, at App'x 000155; *see also* Performant's Motion Ex. I, Performant Fin. Corp.'s Nov. 13, 2017 10-Q (Excerpt), at App'x 000163.

of the plaintiffs for over eight months—disproves the plaintiffs' speculative allegations that the Secretary's former investment could have had any impact on the Department's award decisions, given that any remaining interest the Secretary *might* have had in a Performant entity was indisputably extinguished some *five months* prior to award and well before the agency's evaluation decisions were made. Thus, at the time the Department's procurement officials selected Performant Recovery's proposal for award, they could not have been motivated by trying to financially benefit the Secretary because she did not hold any interest in Performant.

> **D.** **FMS and ConServe have failed to state a claim that Performant Recovery suffered from an organizational conflict of interest that it was required to disclose in its proposal.**

In its Motion, Performant Recovery refuted FMS's novel argument that the Secretary's former investment somehow constituted an actual or apparent OCI for Performant Recovery that it was required to disclose in its proposal. 45/ ConServe apparently now joins in this ill-conceived protest ground. 46/ Neither FMS nor ConServe have alleged that Performant Recovery suffers from a colorable OCI.

The Education Department Acquisition Regulation ("EDAR") conflicts of interest clause, which was included in the Department's solicitation and on which the plaintiffs rely, provides:

---

45/ *See generally* Performant's Motion at 26-27.

46/ In its complaint, ConServe alleged that the Secretary might have a conflict of interest, but it did not argue that Performant had an OCI that it was required to disclose in its proposal. Of note, ConServe now asserts that "Performant was . . . unsure of whether it still had a financial connection to the Secretary when it submitted its proposal in June and the evaluation period began. Had Performant disclosed these facts, as required, it would have likely gone a long way to ensuring that there was an adequate evaluation and mitigation of the apparent conflict *that Performant and [the Department] were aware of*." ConServe Response Br. at 4 (emphasis added). ConServe's position is internally inconsistent. On the one hand, ConServe claims that the lack of an affirmative disclosure from Performant resulted in the agency overlooking the alleged conflict; on the other hand, it states that both Performant and the Department "were aware of" the alleged conflict. Either the Department knew of the alleged conflict or it did not. In any event, neither ConServe nor any other plaintiff has identified any pertinent information related to Secretary DeVos that Performant had access to but that the Government did not.

15

> The contractor . . . has certified that, to the best of its knowledge and belief, there are no relevant facts or circumstances that could give rise to an organizational or personal conflict of interest . . . *for the organization or any of its staff*, and that the contractor . . . has disclosed all such relevant information if such a conflict of interest appears to exist to a reasonable person with knowledge of the relevant facts (or if such a person would *question the impartiality of the contractor*, subcontractor, employee, or consultant). 47/

This is clearly an OCI clause. It covers the **organizational** conflicts of the offeror/contractor and others involved in performing the contract. The clause includes examples of potential conflicts (such as those involving unequal access to information, biased ground rules, or impaired objectivity) 48/ that align with the scope of OCIs under FAR Subpart 9.5, which extend only to conflicts of the contractor. 49/ The clause is particularly concerned with impaired objectivity OCIs, requiring "[o]fferors must provide the disclosure described above on any actual or potential conflict (or apparent conflict of interest) . . . regardless of their opinion that such a

---

47/      AR Tab 40 at 614, EDAR 3452.209-71(a)(1) (emphasis added).

48/      *Id.* The clause defines each of these types of OCIs: (a) unequal access to information, which can arise where "[a] potential contractor . . . has access to non-public information through its performance on a government contract"; (b) biased ground rules, which may occur where "[a] potential contractor . . . has worked, in one government contract, or program, on the basic structure or ground rules of another government contract"; and (c) impaired objectivity, which occurs where *a potential contractor*—not a Government official—has "financial or other interests that would impair, or give the appearance of impairing, impartial judgment in the evaluation of government programs, in offering advice or recommendations to the government, or in providing technical assistance or other services to recipients of Federal funds as part of its contractual responsibility."

49/      *See* FAR 9.505-4 (unequal access to information); FAR 9.505-1, 9.505-2 (biased ground rules); FAR 9.505-3 (impaired objectivity); *cf. Satellite Tracking of People, LLC*, B-411845 *et al.*, 2015 CPD ¶ 347 (where agency official suffered from alleged conflict due to prior employment with offeror, GAO analyzed situation under FAR 3.101 (Standards of Conduct), not FAR 9.5 (OCIs)). Additionally, an OCI, by definition, must have some nexus to the performance of a prior or future government contract. *See, e.g., CapRock Gov't Sols., Inc.*, B-402490 *et al.*, 2010 CPD ¶ 124 ("[A]n unequal access to information OCI exists where a firm has access to nonpublic information *as part of its performance of a government contract* and where that information may provide the firm a competitive advantage in a later competition for a government contract.") (emphasis added).

16

conflict . . . would not impair **their** objectivity." 50/  It does not require an offeror to identify and disclose the potential conflicts of interest of government officials, including those that could affect the impartiality of government officials.  (The Government is best positioned to identify conflicts of its own employees, and it addresses the impartiality of its employees and officials through the extensive OGE regulations and agency supplements, not through contractor OCI regulations and clauses.)

Put simply, the EDAR clause that FMS relies upon does not encompass the type of conflict of interest that these plaintiffs are alleging.  The clause mandated each offeror to disclose potential conflicts that might affect the offeror's own objectivity or otherwise create a conflict of interest for the offeror itself.  As Performant Recovery has already explained, it does not hold, and has never held, any financial interest that would create an actual or potential conflict of interest relevant to this procurement.  Even assuming that Secretary DeVos still held an indirect debt investment in Performant on the date Performant submitted its revised proposal—something Performant would not necessarily know or be able to ascertain, given the indirect nature of the investment through Madison Capital—nothing in the solicitation, including the EDAR clause, required Performant Recovery to disclose the Secretary's investment.

As noted in Performant's Motion, FMS is conflating the Secretary's (former) financial interests with Performant Recovery's financial interests.  Because Performant Recovery was not required to disclose in its proposal the Secretary's attenuated interest in the company's affiliate, ConServe's and FMS's OCI allegations do not entitle them to a legal remedy and do not, even

---

50/      AR Tab 40 at 614, EDAR 3452.209-71(a)(2) (emphasis added).

accepted as true, "'state a claim of relief that is plausible on its face.'" 51/ Accordingly, the Court should dismiss these aspects of FMS's and ConServe's complaints. 52/

> ### E. The plaintiffs' allegations related to Secretary DeVos are ripe for dismissal.

In their responses, several plaintiffs argue that it would be premature for the Court to dispose of their allegations related to Secretary DeVos at this point. They maintain, without any basis, that evidence of wrongdoing may yet surface and that these allegations should be allowed to linger until some unidentified future date. There is no reason for the Court to delay resolving this Motion.

The record contains absolutely no evidence to support the plaintiffs' conjecture that the agency's evaluations and awards were tainted by improper bias in favor of Performant Recovery. Several of the plaintiffs (including ACT, Collecto, ConServe, FMS, and Progressive) filed motions to supplement the administrative record. 53/ These plaintiffs specifically asked the Court to order the Government to produce documents relevant to the impact, if any, that Secretary DeVos's former indirect financial interest in Performant had on this competition. 54/ During the Court's March 23, 2018 hearing, the Court offered the plaintiffs an opportunity to reiterate, and elaborate upon, their supplementation requests. Multiple plaintiffs took advantage

---

51/     *Ingham Reg'l Med. Ctr. v. United States*, 126 Fed. Cl. 1, 20 (2016) (quoting *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998)) (dismissing all of plaintiff's claims pursuant to RCFC 12(b)(6) upon finding that plaintiff failed to adequately plead its claims).

52/     It bears noting that neither FMS nor ConServe have explained how either of them or the Government could have been harmed by some purported failure to disclose given that all of the plaintiffs contend that the Department of Education officials knew about and were improperly influenced by the Secretary 's former indirect debt investment in Performant.

53/     *See* ECF No. 133 (primary motion to supplement the administrative record, which was joined by, *inter alia*, plaintiffs ACT, FMS, and ConServe); ECF No. 135 (Collecto's motion to supplement); ECF No. 142 (Progressive's motion to supplement).

54/     ECF No. 133 at 10; ECF No. 135 at 2; ECF No. 142 at 3. Notably, in making this request, plaintiffs ACT, ConServe, and FMS relied on a case involving allegations of bad faith and bias, further demonstrating that the plaintiffs here are raising similar claims. ECF No. 133 at 11.

of this opportunity and explained to the Court the perceived need for additional documents relevant to various protest grounds. Tellingly, however, during oral argument, ***not a single plaintiff*** mentioned the need for documents related to the Secretary's alleged financial connection to Performant. The plaintiffs seemingly had dropped this issue entirely. At the end of the hearing, the Court directed the Government to produce any documents relevant to the Secretary's former interest and potential impact on the procurement. 55/ Government counsel represented to the Court at the time that no responsive documents exist, and on March 28, 2018, the Government formally notified the Court that "we have reconfirmed with [the Department] that neither the source selection authority nor individual evaluators received any communications or documents in an attempt to influence the final award decision from the Secretary of Education or other [Department] officials." 56/ None of the plaintiffs objected to the Government's representation, moved for discovery, or otherwise took issue with the Government's determination that no documents relevant to the alleged conflict exist.

In light of the foregoing, the record is now complete on the question of the Secretary's alleged undue influence on this procurement, and there is nothing in the record to suggest that Secretary DeVos's prior indirect debt investment in Performant had any impact whatsoever on the Department's evaluation or award decisions. Despite these facts, the plaintiffs apparently are choosing to cling to the hope that incriminating documents may exist and yet come to light. ACT, for example, speculates that "it is possible that during the rolling production the Government will locate and produce these and/or other materials related to Ms. DeVos's

---

55/ *See* ECF No. 160 at 4 (ordering the Government to produce "[a]ll documents (including non-privileged agency communications) related to the appearance of a conflict of interest between Secretary of Education Betsy Devos and Performant").

56/ ECF No. 161 at 2.

connection to Performant in response to the Court's Order." 57/ Similarly, Progressive theorizes that "[d]espite the Government's statement . . . in the course of the production, the Government may find and produce additional evidence that [the Department's] award to Performant Recovery was the result of improper influence or other improper reasoning." 58/ The Government has represented that it does not possess any documents showing that the Secretary influenced the award decision because the Secretary apparently played no role in this procurement. Given the Government's unequivocal representations that the Secretary was not involved and that no relevant documents exist, the plaintiffs' misplaced hope that incriminating documents might be unearthed at a later date is insufficient to preserve these unsupported allegations any longer.

Because the plaintiffs' bad faith and/or bias claims are unfounded and based on nothing more than speculation and innuendo, they are ripe for dismissal, and there is no reason for the Court to delay dismissing them. 59/

Dated: April 26, 2018                                          Respectfully submitted,

*Of Counsel*:                                                        /s/ Michael McGill
                                                                               Michael McGill
Thomas L. McGovern III                           HOGAN LOVELLS US LLP
Christine Reynolds                                        555 Thirteenth Street NW
Thomas A. Pettit                                          Washington, DC 20004
HOGAN LOVELLS US LLP                          Telephone: (202) 637-8862
                                                                               Facsimile: (202) 637-5910
                                                                               michael.mcgill@hoganlovells.com

                                                                               *Counsel of Record for*
                                                                               *Performant Recovery, Inc.*

---

57/    ACT Response Br. at 10 n.6.
58/    Progressive Response Br. at 7 n.5 (emphasis omitted).
59/    *T&M Distribs., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999).

20