# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
# BID PROTEST

| | |
|---|---|
| **FMS INVESTMENT CORP., et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | **No. 18-204C** |
| ) | **(Consolidated)** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Judge Thomas C. Wheeler** |
|     **Defendant,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **PERFORMANT RECOVERY, INC., et al.,** ) | |
| ) | |
|     **Defendant-Intervenors.** ) | |
| ) | |

### PLAINTIFF PROGRESSIVE FINANCIAL SERVICES, INC.'S
### <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff, Progressive Financial Services, Inc., ("Progressive"), files this Response to Defendant Department of Education's ("ED" or the "Agency") Motion to Dismiss. As demonstrated below, Progressive has requested leave to file a Supplemental Complaint to assert additional grounds of protest relating to ED's continuing irrational actions, and therefore its bid protest is not moot; rather, in light of Progressive's Supplemental Complaint, the Government's motion to dismiss the original complaint is now moot. The Government's Motion should be denied, and the parties should proceed to the merits of Progressive's protest, as this Court continues to have subject matter jurisdiction over ED's actions.

## FACTS

In December 2015, the Department of Education ("ED" or the "Agency") issued Solicitation No. ED-FSA-16-R-0009 (the "Solicitation") for default collection services under indefinite delivery/indefinite quantity (IDIQ) contracts. In December 2016, ED awarded

contracts under the Solicitation to seven firms. Progressive was not awarded a contract. Following ED's award decision, 22 firms, including Progressive, protested the contract awards at the Government Accountability Office ("GAO"), challenging ED's evaluation of proposals and resulting award decisions. On March 27, 2017, GAO issued a decision identifying multiple errors with the evaluation of proposals under the Solicitation, including Progressive's, and recommending the Agency conduct and adequately document a new evaluation of proposals, and prepare and adequately document a new source selection document. *Gen. Revenue Corp.*, B-414220.2 *et al.*, Mar. 27, 2017, 2017 CPD ¶ 106.

In March, April, and May 2017, a number of firms filed complaints in the U.S. Court of Federal Claims ("COFC").[1] After a lengthy protest process, and in response to the numerous protests filed, on May 19, 2017, the Agency announced it would take corrective action by making minor amendments to the Solicitation, requesting revised proposals, and conducting a new evaluation. *Continental Service*, No. 17-449C, Dkt. Nos. 122–135. After months of delay, on December 12, 2017 this Court ordered the Agency to make its final award decisions and complete corrective action by January 11, 2018. Case No. 17-449C, Dkt. No. 215.

On January 11, 2018, in order to meet the Court's deadline, the Agency announced it had completed its reevaluation of revised proposals and had awarded new contracts under the Solicitation to Performant Recovery, Inc. ("Performant") and Windham Professionals, Inc. ("Windham"). Case No. 17-449C, Dkt. No. 231.

---

[1] *See Continental Service Group, Inc. v. United States*, No. 17-449 ("Continental Service"), *Account Control Technology, Inc. v. United, States*, No. 17-493, *Pioneer Credit Recovery, Inc. v. United States,* No. 17-499, *Alltran Education, Inc. v. United States*, No. 17-517, *Collection Technology, Inc. v. United States*, No. 17-578, *Van Ru Credit Corp. v. United States,* No. 17-633, *Continental Service Group, Inc. v. United States*, No. 17-664, *Automated Collection Services, Inc. v. United States,* No. 17-765.

After it received its debriefing, Progressive filed its Complaint with this Court protesting ED's irrational, arbitrary, and capricious evaluation and the resulting flawed award decisions on February 13, 2018. *See Progressive Financial Services, Inc. v. United States,* No. 18-220C, Dkt. No. 1.[2] Progressive's case was consolidated with 19 other protests as the above-captioned case, Case No. 18-204C.

On March 9, 2018 the Government produced a consolidated Administrative Record in this matter, and the parties began preparing Motions for Judgment on the Administrative Record pursuant to the schedule set by the Court. *See* Dkt. Nos. 18, 131. On March 12, 2018, Progressive and several other plaintiffs filed Motions to Supplement the Administrative Record. *See* Dkt. Nos. 142, 159; 135–138. The Court subsequently suspended the briefing schedule. Dkt. No. 139.

On March 19, 2018, the Government filed a Notice with the Court that stated as follows:

> Since the 19 protests currently pending before the Court were filed, ED has been reviewing this solicitation in order to assess its options and to identify the best path forward for the agency and borrowers. ED has reached a point in its analysis where it appears likely that a course of action other than continued litigation of the pending protests will be pursued. ED has not completed the analysis yet and has not made a final decision as to a course of action. All options remain on the table.

Dkt. No. 149. After several parties objected to ED's vague statements and lack of direction, the Government replied that it would "commit to filing an update with the Court no later than April 11, 2018, that will set a firm date for the announcement of ED's final decision on how ED intends to proceed." Dkt. No. 154. The Court suspended briefing on the merits of plaintiffs' protest allegations pending the announcement from ED, although the Government continued to provide documents and supplement the AR.

---

[2] References to Progressive's Complaint herein reference Progressive's Supplemental Complaint, filed as Exhibit A to Dkt. No. 236.

On April 11, 2018, the Government once again failed to provide any definitive statement of its intentions, advising the Court and the parties only that it would file another notice on or before May 4, 2018 to advise on ED's proposed course of action. Dkt. No. 178. Then, on May 3, 2018, the Government filed a Notice with the Court indicating that it had completed its review of the Solicitation, and that it had decided to cancel the Solicitation "due to a substantial change in the requirements to perform collection and administrative resolution activities on defaulted Federal student loan debts." Dkt. No. 188 at 1. The May 3 Notice provided:

> In the future, ED plans to significantly enhance its engagement at the 90-day delinquency mark in an effort to help borrowers more effectively manage their Federal student loan debt. ED expects these enhanced outreach efforts to reduce the volume of borrowers that default, improve customer service to delinquent borrowers, and lower overall delinquency levels. The current private collection agencies (PCA) under contract with ED have sufficient capacity to absorb the number of accounts expected to need debt collection services while the process for transitioning to the new approach is developed and implemented. Therefore, additional PCA contract work is not currently needed.

*Id.* However, the handful of current PCA contracts have essentially the same capacity they have had for years, and, despite ever-increasing default rates, the only new concept in the Government's May 3 Notice is ED's plan to call each delinquent borrower at the point in time when the borrower is 90-days delinquent in making payments. ED gave no indication as to when or how it would implement this new "plan" or the basis for believing that a single call—which it apparently assumed the borrower would always answer—would reduce debt collection demand so much as to render this procurement unnecessary.

As a result of this decision, on May 7, 2018, the Government moved to dismiss the consolidated protests under RCFC 12(b)(1), attaching the cancellation order and arguing that the protests are now moot. Dkt. No. 189. On May 10, 2018, Progressive filed a Notice indicating that it intended to oppose the Government's Motion to Dismiss. Dkt. No. 198. Progressive has

4

requested leave to file a Supplemental Complaint to address the Government's recent actions that continue to present a justiciable claim or controversy for the Court to adjudicate. Dkt. No. 236.

## ARGUMENT

**I.     The Court Has Continuing Jurisdiction
Over The Validity Of the Cancellation Of The Procurement**

Because Progressive has requested leave to file a supplemental complaint in this matter, the Government's motion to dismiss the original complaint is now moot and the Court retains jurisdiction over this matter. *Innovation Dev. Enterprises of Am., Inc. v. United States*, No. 11-217 C, 2012 WL 251985, at *4 (Fed. Cl. Jan. 11, 2012). The 1996 amendments to the Tucker Act grant this Court "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. 28 U.S.C. §1491(b)(1), added by the Administrative Dispute Resolution Act, Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874 (1996); *see also Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012).

The United States Court of Appeals for the Federal Circuit has stated that the Court of Federal Claims' jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1) (2012), "provides a broad grant of jurisdiction because '[p]rocurement includes *all stages of the process of acquiring property or services*, beginning with the process for determining a need for property or services and ending with contract completion and closeout.' " *Sys. Application & Techs., Inc.*, 691 F.3d at 1381 (emphasis in original); *Distrib. Sols, Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) ("[T]he phrase, 'in connection with a procurement or proposed procurement,' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.' ").

5

The Court's ability to entertain protests challenging an agency's decision to cancel a procurement is well-established. *See, e.g.*, *Starry Assocs., Inc. v. United States*, 127 Fed. Cl. 539, 549 (2016); *Coastal Envtl. Grp., Inc. v. United States,* 118 Fed. Cl. 1 (2014), *WHR Grp., Inc. v. United States,* 115 Fed. Cl. 386, 398–402 (2014*);MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 519–25 (2011); *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 114–15 (2011); *Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673 (2009); *FFTF Restoration Co. v. United States*, 86 Fed. Cl. 226, 236–45 (2009); *see also Croman Corp. v. United States*, 724 F.3d 1357, 1363–65 (Fed. Cir. 2013). Moreover, the ability of a plaintiff to use a supplemental complaint to cure a jurisdictional defect in an earlier-filed complaint is well-settled by binding precedent. *See Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124, 132 (2013) (citing cases). As the Court explained in that case, the Supreme Court has held that a plaintiff who did not satisfy a "nonwaivable condition of jurisdiction" until after he filed suit could have cured the jurisdictional defect of his original complaint by filing a supplemental complaint. *Id.* (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)). In *Black v. Secretary of Health and Human Services*, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explains, the *Mathews* decision was "consistent with others holding that defects in a plaintiff's case—even jurisdictional defects—can be cured while the case is pending if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied this defect." 93 F.3d 781, 790 (Fed. Cir. 1996). Whether a supplemental complaint could cure a defect, the Federal Circuit explained, depended on whether the substantive provision providing the trial court with subject matter jurisdiction expressly prohibited the filing of a complaint before a specified waiting period or before the exhaustion of administrative remedies. *Id.* It concluded that in the absence of such a provision, and so long as a plaintiff has satisfied the

jurisdictional requirements within the relevant limitations period, a complaint may be supplemented to cure the original jurisdictional defect. *Id*. at 791–92.

Applying *Coastal, Mathews* and *Black* here, Progressive has cured, with its supplemental complaint, the jurisdictional defect arising from the cancellation of the procurement that was the subject of its protest. There are no waiting periods or administrative exhaustion requirements for bid protests. *See* 28 U.S.C. § 1491(b) (describing the bid protest jurisdiction of the Court of Federal Claims). Nor has the statute of limitations for plaintiff's supplemental allegations expired. *See id*. §§ 2401 (providing a six-year limitations period for civil actions filed against the United States), 2501 (providing a six-year limitations period for suits filed in the Court of Federal Claims). Progressive's request for leave to supplement the Complaint was filed 15 days after it received Notice that the Government intended to cancel the solicitation. Dkt. No. 188.

As detailed in its Supplemental Complaint, Progressive has alleged that the Government's decision to cancel is unreasonable, lacks a rational basis, and relies on an arbitrary and capricious rationale. Accordingly, Progressive's claims regarding ED's decision to cancel the Solicitation are not moot, and this Court should retain jurisdiction to review the validity of the Government's actions regarding this procurement as this situation develops.

## II. The Court Retains Jurisdiction Over Progressive's Entire Protest

Because ED's decision to cancel the Solicitation is improper, the Court retains jurisdiction over Progressive's entire protest. If there is no rational basis to support cancellation of the Solicitation and termination of awards, Progressive's protest grounds concerning the evaluation of its proposal and the awardees' proposals remain viable (Counts I-III, and VII), and should be decided by the Court in accordance with the Rules of this Court. However that determination cannot exist until the Court first determines whether ED's cancellation decision

7

was reasonable.  If the Court grants relief to Progressive under Count IX of its Supplemental Complaint (Dkt. No. 236, Exhibit A), the effect would be a return to the *status quo* that existed before ED made the decision to cancel the Solicitation, namely, a flawed evaluation and improper awards to Performant and Windham.  If Counts I-III, and VII of Progressive's Complaint are dismissed now, and Progressive prevails under Count IX, Progressive will have to re-file its protest to obtain full relief.  Accordingly, is premature to dismiss Counts I-III and VII at this time, before the Court determines whether ED's cancellation decision was proper.  Upon prevailing under Count IX, Progressive will seek relief in the form of an award to Progressive, as an offeror who offered a superior proposal, or, in the alternative, will seek an Order from the Court requiring ED to re-evaluate the proposals, proceed with the procurement, and make an award as required by the Solicitation and federal law.  Thus, the interests of judicial economy and efficiency weigh against the outright dismissal of Progressive's underlying protest grounds as moot, without further analysis regarding the proprietary and reasonableness of ED's cancellation decision.

     Further, the Court retains jurisdiction over any allegations that the Government breached its duty of good faith and fair dealing and failed to treat all offerors honestly and impartially.  The cancellation of any procurement must comply with the overarching regulatory requirements of integrity, honesty, and impartial treatment of all prospective contractors.  *Madison Serv.*, 92 Fed. Cl. at 127 (citing FAR 1.102 (b) (3); FAR 1.102-2 (c) (3)).  Certainly this Court has continuing jurisdiction to ensure that these requirements are met when a procurement is cancelled, and the Court is not suddenly deprived of subject matter jurisdiction by the unilateral actions of the defendant, the very party whose actions are necessarily under scrutiny in the event of a cancellation.  In the cited *Madison Serv*. decision, plaintiff won award of a competitively

procured contract, then the procurement was cancelled, and the agency sought to award a sole source contract to another company. 92 Fed. Cl. at 124. The Court took jurisdiction of plaintiff's claim that cancellation of the procurement was a bad faith "subterfuge" and a mere litigation tactic. *Id.*

Progressive's Counts IV and V allege that, by engaging in a procedurally and substantively flawed procurement process, by recalling Progressive's accounts, by engaging in unequal treatment of offerors, by engaging in unequal treatment of offerors in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253 et seq., and FAR §§ 1.102-2, 1.602-2, and 3.101-1, and by violating procurement law and the Temporary Restraining Order in place at the time, the Government breached the duty of good faith and fair dealing and failed to treat offerors equally. The Government's cancellation here only adds to its failings and breaches of its duties/violations of its regulatory obligations, and appears to be a litigation tactic unrelated to ED's legitimate procurement needs—which is the very definition of improper cancellation.

Count VI challenges ED's improper recall of Progressive's "in-repayment" accounts during its corrective action. The harm to Progressive occasioned by ED's improper corrective action, resulting in the recall of accounts, is not mooted by cancellation of the procurement; that harm continues to exist as a violation of procurements laws/regulations in connection with a procurement or proposed procurement, whether the procurement continues or not. And finally, the remaining counts in Progressive's Supplemental Complaint seek declaratory and injunctive relief, both for cancellation and for relief in the absence of the improper cancellation.

The Government's attempt to extricate itself from the self-inflicted harm caused by its improper evaluations and award, and the improper recall of in-repayment accounts, was to unilaterally announce that it has decided to end the case by cancelling the procurement and

terminating the awards to Performant and Windham.  But this Court has jurisdiction to evaluate the validity of the cancellation, including the Agency's breach of the duty of good faith and fair dealing, and its failure to treat offerors honestly and impartially related to its cancellation decision, as well as the independent claim based on the Agency's earlier improper corrective action by recalling Progressive's "in-repayment" accounts, and, if, as alleged, the cancellation is improper, all remaining counts in Progressive's supplemental complaint.

Progressive therefore requests that the Court deny the Government's motion, retain jurisdiction of the matter, and require the Government to explain the rational basis, if any, underlying its actions, and award Progressive its bid and proposal costs incurred in participating in the cancelled procurement.  *See* 28 U.S.C. § 1491(b)(2) (Court of Federal Claims has jurisdiction to award bid and proposal costs in the appropriate circumstances).

## CONCLUSION

For the foregoing reasons, Progressive respectfully requests that this Court deny the Government's Motion to Dismiss as Progressive has stated valid claims in its Supplemental Complaint that should be permitted to proceed to briefing on their merits, in accordance with the Rules of this Court.  Progressive also requests all other relief to which it may be entitled.

Date: May 18, 2018                                                          Respectfully submitted,

 

                                       */s/ Thomas A. Coulter*
                                       Thomas A. Coulter
                                       O'Hagan Meyer PLLC
                                       411 E. Franklin Street, Suite 500
                                       Richmond, VA 23219
                                       Tel: (804) 403-7130
                                       Fax: (804) 403-7110
                                       E-mail: tcoulter@ohaganmeyer.com
                                       *Counsel of Record for Progressive*
                                       *Financial Services, Inc.*

*Of counsel:*
Nicole Hardin Brakstad
O'Hagan Meyer PLLC
411 E. Franklin Street, Suite 500
Richmond, VA 23219
Tel: (804) 403-7129
Fax: (804) 403-7110
E-mail: nbrakstad@ohaganmeyer.com

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel for all parties.

*/s/ Thomas A. Coulter*
Thomas A. Coulter